Clarence WHITE, Plaintiff-Appellant,

v.

**VALLEY LINE COMPANY,**
**Defendant-Appellee.**

No. 83–3158.

United States Court of Appeals,
Fifth Circuit.

July 16, 1984.

Edwards & Loeb, Marion F. Edwards, Gretna, La., for plaintiff-appellant.

Lemle, Kelleher, Kohlmeyer & Matthews, Miles P. Clements, New Orleans, La., for defendant-appellee.

Before RANDALL, TATE and WILLIAMS, Circuit Judges.

RANDALL, Circuit Judge:

In this Jones Act case, the district court granted summary judgment for the defendant-appellee, Valley Line, holding that its employee, plaintiff-appellant Clarence White, was not a seaman as a matter of law. For the reasons that follow, we affirm.

## I. Factual and Procedural Background.

Clarence White was employed as a fleetman at Valley Line's barge fleeting facility in Marrero, Louisiana. At the facility, Valley Line maintained fleetage for its own barges as well as for those of numerous other barge lines. The barges at the facility were serviced by Valley Line's employees in various ways, including washing, pumping, minor repairs, and building tow. White's duties consisted of performing these tasks as needed on the barges at the fleeting area, regardless of their ownership. He also drove a company truck from time to time to perform various errands on land. In his deposition, White estimated that he spent approximately fifty percent of his time tying and releasing tow lines on barges that were docked at the facility, and fifty percent cleaning and repairing barges. He resided on shore, ate his meals there, and went home every night.

White was injured while in the process of attaching a line between two barges. He brought suit against his employer under the Jones Act, 46 U.S.C. § 688 (1982), contending that he was a "seaman" within the meaning of the Act. Valley Line moved for summary judgment, asserting that White was not entitled to seaman status because he was not permanently assigned to a vessel or group of vessels. The district court granted the motion.[1] This appeal followed.

## II. Summary Judgment.

Our cases firmly establish that the issue of seaman status is ordinarily a jury question, even when the claim to seaman status is marginal. *Bouvier v. Krenz*, 702 F.2d 89, 90 (5th Cir.1983); *Bertrand v. International Mooring & Marine, Inc.*, 700 F.2d 240, 244 (5th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984); *Barrios v. Louisiana Construction Materials Co.*, 465 F.2d 1157, 1162 (5th Cir.1972). However, in an appropriate case, summary judgment is proper. *Bouvier, supra; see also Guidry v. Continental Oil Co.*, 640 F.2d 523 (5th Cir.), *cert. denied*, 454 U.S. 818, 102 S.Ct. 96, 70 L.Ed.2d 87 (1981). We have characterized such a case as one "where the underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw conflicting inferences about these facts." *Bertrand*, 700 F.2d at 244; *see also Abshire v. Seacoast Products Inc.*, 668 F.2d 832, 835 (5th Cir.1982). In the case before us, we think that the district court properly concluded that summary judgment on the issue of seaman status was appropriate.

## III. Seaman Status.

Because the Jones Act and the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (1982) ("LHWCA"), are mutually exclusive, a claimant seeking to avail himself of the Jones Act must be a seaman or a member of the crew of a vessel.[2] In *Offshore Co. v. Robison*, 266 F.2d 769 (5th Cir.1959), we established the test for seaman status:

[T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed

---

1. The district court did not state its reasons in writing; however, at the summary judgment hearing, the judge stated:

   I really don't think this is a seaman case. There is no real dispute there. The man had a very transitory relationship to this group of vessels ....

   Supp. Record on Appeal at 3.

2. The LHWCA provides benefits for all marine workers except a master or "a member of a crew of any vessel." The Jones Act provides coverage for "seamen." It is firmly established that the terms are interchangeable and that the criteria for establishing each are the same. *See, e.g., Bouvier v. Krenz*, 702 F.2d 89, 91 (5th Cir. 1983); *Bertrand v. International Mooring & Marine, Inc.*, 700 F.2d 240, 243 & n. 7 (5th Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984).

contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

*Id.* at 779 (footnote omitted). Thus, the test is conjunctive and contemplates its first prong being satisfied in one of two alternative ways. *See Bertrand, supra,* 700 F.2d at 246.

White asserts that a genuine factual dispute exists with regard to whether he satisfies either alternative embodied in *Robison*'s first prong. He argues both that he was "permanently assigned" to Valley Line's fleet of barges, and that he spent virtually all of his time on board vessels, thus satisfying the "substantiality" standard. The district court's summary judgment appears to have been premised on White's failure to satisfy the permanency alternative, but the court did not address substantiality. *See supra* note 1. Because the first prong of the *Robison* test is couched in the alternative, however, we must look to substantiality if permanency is not present. Nonetheless, our review of the record clearly reflects that, even applying the alternative test, the district court's disposition of the case was correct.

■ The transitory nature of White's contact with the vessels upon which he worked is clear. As many as 140 vessels passed through the fleeting facility on a given day, and White's assignment to any of the ships was random and impermanent. His duties aboard the various vessels took from a few minutes to several hours. While we do not require that a claimant be assigned to a single vessel to come within the Jones Act, *see Braniff v. Jackson Ave. —Gretna Ferry, Inc.,* 280 F.2d 523 (5th Cir.1960), we have repeatedly stated that we require a "vessel relationship that is substantial in point and time and not merely spasmodic." *Bertrand, supra,* 700 F.2d at 247. Our requirement of a connection that is more than transitory " 'is meant to deny seaman's status to those who come aboard a vessel for an isolated piece of work, not to deprive a person whose duties are truly navigational of Jones Act rights merely because he serves aboard a vessel for a relatively short period of time.' " *Bertrand,* 700 F.2d at 247 (quoting *Porche v. Gulf Mississippi Marine Corp.,* 390 F.Supp. 624, 631 (E.D.La.1975)). The requisite permanency is clearly not present in White's connection with the vessels upon which he worked.

■ White contends, however, that he has raised a factual dispute with regard to the substantiality alternative of *Robison,* citing the fact that he spent a majority of his time aboard vessels. We have noted, and reiterate here, that "the question of substantiality comprehends more than a mere quantitative assessment of where the claimant spent the greater part of his working day." *Longmire v. Sea Drilling Corp.,* 610 F.2d 1342, 1346 (5th Cir.1980). Thus, we have emphasized that the issue of seaman status "should be addressed with reference to the nature and location of his occupation taken as a whole." *Id.* at 1347; *see also Bouvier v. Krenz, supra,* 702 F.2d at 90. The ultimate inquiry is whether the claimant's activities, examined in the aggregate, raise a genuine factual dispute with regard to seaman status under the Jones Act. *See id.*

Moreover, we have held in numerous prior cases that the substantial work required by this alternative be spent aboard a vessel or an identifiable or recognizable fleet of vessels. *See, e.g., Guidry v. Continental Oil Co.,* 640 F.2d 523 (5th Cir.), *cert. denied,* 454 U.S. 818, 102 S.Ct. 96, 70 L.Ed.2d 87 (1981); *Braniff v. Jackson Ave.—Gretna Ferry, supra.* White relies heavily, however, on our recent decision in *Bertrand v. International Mooring & Marine, supra,* for the proposition that neither common ownership nor control of a fleet of vessels is a prerequisite to seaman status. In *Buras v. Commercial Testing & Engineering Co.,* 736 F.2d 307 (5th Cir.1984), also decided this day, we noted that while *Bertrand* held that lack of common ownership or control of a fleet of vessels would

not in itself serve to deny seaman status, it could not "fairly be read so broadly as to confer seaman status on every worker whose duties place him aboard a large number of randomly-owned and controlled vessels for short periods of time that aggregate to comprise a substantial portion of his working time . . . ." We pointed out in *Buras* that *Bertrand* did not eradicate the concept of an identifiable fleet. *See, e.g., Aparicio v. Swan Lake*, 643 F.2d 1109 (5th Cir.1981); *Guidry v. Continental Oil Co., supra; Fazio v. Lykes Bros. Steamship Co.*, 567 F.2d 301 (5th Cir.1978); *Rotolo v. The Halliburton Co.*, 317 F.2d 9 (5th Cir.1963). Rather, our decision in *Bertrand* rested on a concern that workers who might be found to be blue water seamen engaged in traditional maritime activities not be denied seaman status because of the mere "happenstance of a particular ownership or chartering arrangement," *Buras, supra*, where such happenstance "was determined by the employer, not by the nature of the claimant's work." *Bertrand*, 700 F.2d at 245.

In the instant case, as in *Buras*, the aggregation of the circumstances of White's employment demonstrate that as a matter of law he could not have been found to be a seaman. *See Bouvier v. Krenz*, 702 F.2d at 90. As a shore-based worker, he ate ashore and went home every night. Moreover, as in *Bouvier* and *Buras*, and in contrast to *Bertrand*, the lack of common ownership or control of the vessels upon which White worked was determined by the very nature of his job, not by an ownership or chartering arrangement within his employer's control. We have never held, and decline to do so here, that for Jones Act purposes a fleet of vessels may permissibly be defined as the variously-owned ships putting in to a given facility for fleeting or repairs. *See Bouvier, supra* (assuming, *arguendo*, that even if such a definition is appropriate, the aggregate circumstances of claimant's employment as shorebound ship repairman did not make him a seaman); *see also Fazio v. Lykes Bros. Steamship Co., supra*.

Our disposition of this issue renders it unnecessary for us to address whether White's employment contributed to the function of the vessels upon which he worked or to the accomplishment of their mission. *Robison*.

In light of the foregoing, we hold that the district court's summary judgment on the issue of seaman status was proper, and AFFIRM.