**Clyde BURAS, Plaintiff-Appellant,**

v.

**COMMERCIAL TESTING & ENGINEERING COMPANY, et al., Defendants-Appellees.**

**No. 83–3358.**

United States Court of Appeals, Fifth Circuit.

July 16, 1984.

Morris Bart, III, Laurence Cohen, New Orleans, for plaintiff-appellant.

Normann & Normann, Russell M. Cornelius, New Orleans, La., for Electro-Coal.

Deutsch, Kerrigan & Stiles, A. Wendel Stout, III, New Orleans, La., for Geo Int'l, CNA & Commercial Testing.

Before RANDALL, TATE and WILLIAMS, Circuit Judges.

RANDALL, Circuit Judge:

In this appeal from a grant of summary judgment, we are once again presented with the issue of seaman status under the Jones Act. The district court held that the appellant, Clyde Buras, was not a seaman and granted summary judgment for his employer, appellee Commercial Testing & Engineering Company. For the reasons set forth below, we affirm.

## I. Factual and Procedural Background.

Clyde Buras was employed by Commercial Testing as a coal sampler and temperature taker. In the course of his employment, Buras tested coal on various barges, ships, and land-based coal stockpiles, primarily at two fleeting facilities. On November 7, 1981, Buras injured his back while on board a coal-transporting barge. He brought this suit against Commercial Testing under the Jones Act, 46 U.S.C. § 688 (1982), contending that he was a seaman within the meaning of the Act.

After discovery, Commercial Testing moved for summary judgment, alleging that as a matter of law Buras was not a

seaman. The district court granted the motion and entered summary judgment against Buras, finding that he was neither permanently assigned to nor did he perform a substantial amount of his work aboard an identifiable fleet of vessels. Alternatively, the district court found that Buras' duties did not contribute to the function of the vessels or to the accomplishment of their mission. This appeal followed.

## II. Summary Judgment.

In reviewing the district court's grant of summary judgment, we apply well established principles. Summary judgment is appropriate where the underlying facts are undisputed, and the record reveals no evidence from which reasonable persons might draw conflicting inferences from those facts. *See, e.g., Ardoin v. J. Ray McDermott & Co.,* 641 F.2d 277, 280 (5th Cir.1981). We must view the evidence and any inferences to be drawn therefrom in the light most favorable to the party against whom the judgment is sought to determine whether there is any genuine issue as to any material fact and whether the movant is entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Coulter v. Texaco, Inc.,* 714 F.2d 467, 468 (5th Cir.1983).

█ It is likewise well settled that while summary judgment in Jones Act cases is rarely appropriate and that even marginal cases ordinarily should go to the jury, *see, e.g., Bouvier v. Krenz,* 702 F.2d 89, 90 (5th Cir.1983), "it is in some circumstances proper to rule as a matter of law that a worker is not a seaman." *Id.; see also Bertrand v. International Mooring & Marine, Inc.,* 700 F.2d 240, 244 (5th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984); *Barrios v. Engine Gas & Compressor Services, Inc.,* 669 F.2d 350, 352 (5th Cir.1982). In the case before us, the parties agree that the relevant facts are not in dispute. There they diverge, however: Commercial Testing asserts that the undisputed facts establish that as a matter of law Buras was not a seaman;

whereas Buras contends that there are conflicting inferences to be drawn from the facts, thus precluding summary judgment.

## III. Seaman Status.

█ With respect to coverage, the Jones Act and the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.* (1982), are mutually exclusive. The Jones Act permits recovery for "[a]ny seaman who shall suffer personal injury in the course of his employment," whereas the LHWCA extends to all maritime workers except a master or "a member of a crew of any vessel." The terms "seaman" and "member of a crew" are now used interchangeably. *See, e.g., Bouvier v. Krenz, supra,* 702 F.2d at 91; *Bertrand, supra,* 700 F.2d at 243 & n. 7; *McDermott, Inc. v. Boudreaux,* 679 F.2d 452, 455 (5th Cir.1982). To avail himself of the liberal terms of the Jones Act, Buras must at least demonstrate that a genuine factual issue exists as to whether he was a seaman at the time of his injury; if he was not, his remedies lie within the provisions of the LHWCA. *See Longmire v. Sea Drilling Co.,* 610 F.2d 1342, 1345 (5th Cir. 1980).

█ In *Offshore Co. v. Robison,* 266 F.2d 769 (5th Cir.1959), we established the test for seaman status under the Jones Act:

> [T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

*Id.* at 779 (footnote omitted); *see Wallace v. Oceaneering International,* 727 F.2d

427 (5th Cir.1984); *McDermott, Inc. v. Boudreaux, supra,* 679 F.2d at 457. Thus, to survive a motion for summary judgment the claimant must demonstrate a factual dispute with regard to the permanency *or* the substantiality of his employment relationship with a vessel or group of vessels, *and* that his work contributed to the operation or function of the vessel or to the accomplishment of its mission. *See Bertrand,* 700 F.2d at 246.[1] Because we find that in this case Buras has failed to meet either alternative embodied in *Robison's* first criterion, we find it unnecessary to address the second.

*Permanency.*

■ There is no doubt that Buras was not "assigned permanently to a vessel" or vessels.[2] We have noted that this requirement has not been given a "wooden application," *Brown v. ITT Rayonier, Inc.,* 497 F.2d 234, 237 (5th Cir.1974), and have characterized the permanency inquiry as being "more frequently an analytical starting point than a self-executing formula." *Id.* It is clear, however, that to be deemed a Jones Act seaman the claimant must have "more than a transitory connection" with a vessel or group of vessels. *Davis v. Hill Engineering, Inc.,* 549 F.2d 314, 326 (5th Cir.1977). Our focus in this regard is "'meant to deny seaman's status to those who come aboard a vessel for an isolated piece of work, not to deprive a person whose duties are truly navigational of Jones Act rights merely because he serves aboard a vessel for a relatively short period of time.'" *Bertrand,* 700 F.2d at 247 (quoting *Porche v. Gulf Mississippi Marine Corp.,* 390 F.Supp. 624, 631 (E.D.La.

1975)). Thus, as we stated in *Bertrand,* "we review the facts in light of factors evincing a vessel relationship that is substantial in point and time and not merely spasmodic." 700 F.2d at 247.

In the instant case, the record reflects that Buras was randomly assigned to a given vessel or land-based stockpile to test the temperature of coal. The testing crew tested between five and fifty barges per day, depending on the number of vessels coming through the fleeting facilities. On the day that Buras was injured, he had already tested the coal on thirteen or fourteen barges. His contact with a given vessel was short in duration and limited to the administration of a temperature test. Buras' connection with the vessels, therefore, cannot be deemed anything but "transitory." *See Bertrand,* 700 F.2d at 246; *Ardoin v. J. Ray McDermott & Co., supra; Guidry v. Continental Oil Co.,* 640 F.2d 523 (5th Cir.), *cert. denied,* 454 U.S. 818, 102 S.Ct. 96, 70 L.Ed.2d 87 (1981); *Davis v. Hill Engineering, Inc., supra.*

*Substantiality.*

Buras contends, however, that there is a genuine dispute of fact as to whether he can satisfy the "substantiality" prong of *Robison.* Buras argues that because he spent seventy-five per cent of his working time on board barges, summary judgment on this issue was improper.

■ Charting the course of the substantiality requirement has proved to be a difficult task.[3] We have stated that "there is no bright-line test to be applied in determining the frequency and regularity of per-

---

**1.** In *Bertrand* we acknowledged that "we have sometimes emphasized the permanency aspect to the apparent exclusion of the substantial work prong of the standard." 700 F.2d at 246. We then went on, however, to reaffirm the explicit language of *Robison* itself, which clearly contemplates the satisfaction of its first criterion by *either* of the alternatives. *Id.*

**2.** Although *Robison* spoke in the singular, we established in *Braniff v. Jackson Ave.—Gretna Ferry, Inc.,* 280 F.2d 523 (5th Cir.1960), that seaman status was not necessarily dependent on a single vessel. Rather, we held there that

"there is nothing about this expanding concept [of seaman status] to limit it mechanically to a single ship." 280 F.2d at 528. Thus, we held that *Robison's* first criterion could be met by a showing that the claimant was "'assigned permanently to' several specific vessels 'or perform[s] a substantial part of his work on the' several specified 'vessel[s].'" *Id.* (quoting *Robison* ).

**3.** *See generally* Engerrand & Bale, *Seaman Status Reconsidered,* 24 So.Tex.L.J. 431, 477–90 (1983).

formance which must be shown to claim [seaman] status," but "incidental and temporary duty" will not suffice. *Keener v. Transworld Drilling Co.*, 468 F.2d 729, 731–32 (5th Cir.1972). It is clear, however, that our analysis must focus on the nature and location of the claimant's employment taken as a whole. *Longmire v. Sea Drilling Corp., supra,* 610 F.2d at 1347. In *Bertrand,* we stressed that "no particular factor is determinative of seaman status, but each is indicative." 700 F.2d at 247; *see also Bouvier v. Krenz,* 702 F.2d at 90.

In applying the substantiality test in cases where the claimant performed tasks on a number of vessels not part of a commonly-owned fleet, we have denied seaman status for the lack of an identifiable fleet. *See, e.g., Jones v. Mississippi River Grain Elevator Co.*, 703 F.2d 108, 109 (5th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 175, 78 L.Ed.2d 157 (1983); *Aparicio v. Swan Lake,* 643 F.2d 1109 (5th Cir.1981); *Guidry v. Continental Oil Co., supra; Fazio v. Lykes Bros. Steamship Co.,* 567 F.2d 301 (5th Cir.1978); *Rotolo v. The Halliburton Co.,* 317 F.2d 9 (5th Cir.1963); *see also Wallace v. Oceaneering International, supra; Bouvier v. Krenz, supra.*

These cases, however, must now be assessed in light of *Bertrand.* There, the plaintiffs were members of an anchorhandling crew, employed by International Mooring & Marine, who were assigned to relocate a Tenneco drilling rig. Tenneco had chartered and specially outfitted a vessel that the plaintiffs' employer then borrowed. The plaintiffs ate and slept aboard the vessel during the relocation job. Three of the plaintiffs were killed and one was injured in a car wreck while returning from the job. The district court granted summary judgment to the employer on the issue of seaman status, holding that although the employer does not have to be the ship

owner in order to have Jones Act liability, *see, e.g., Roberts v. Williams-McWilliams Co.*, 648 F.2d 255, 262 (5th Cir.1981), the lack of a recognizable unit of vessels under either common ownership or control was fatal to the plaintiffs' claim. We reversed, holding that employers were not to be permitted to deny Jones Act coverage to seamen "by arrangements with third parties regarding the vessel's operation or by the manner in which the work is assigned." 700 F.2d at 245.

Although *Bertrand* thus expanded the concept of a fleet to encompass vessels used, but not owned or chartered, by the employer, we do not believe that it can fairly be read so broadly as to confer seaman status on every worker whose duties place him aboard a large number of randomly-owned and controlled vessels for short periods of time that aggregate to comprise a substantial portion of his working time, nor do we believe that *Bertrand* rejected the identifiable or recognizable fleet requirement established by our prior cases.[4] Rather, *Bertrand* must be read in light of the factual situation it involved. Our concern there was to prevent the denial of Jones Act seaman status as a matter of law to those claimants who are engaged in traditional maritime activity on a vessel or vessels comprising an identifiable fleet in every respect except common control or ownership. We noted that in *Bertrand* that "whether the different vessels were under common ownership or control was determined by the employer, not the nature of the claimants' work," 700 F.2d at 245, and that on occasion the claimants' employer chartered vessels directly. *Id.* It was clearly established, furthermore, that the *Bertrand* claimants were, arguably at least, "classical blue water" workers engaged in traditional maritime activities.

---

**4.** *But see* Engerrand & Bale, *supra* note 3, at 489–90, characterizing *Bertrand*'s treatment of the permanent assignment/substantial work aspect of *Robison* as "simply dispens[ing] with the restriction placed on seaman status by Congress [in the LHWCA] that the worker must be a member of a crew of a vessel .... By defining 'fleet' as the vessels on which the claimant works and only requiring that he spend his time on those vessels, the test for seaman status has been returned to the pre-LHWCA era in which longshoremen and other land-based transient maritime workers were considered seamen." (Footnotes omitted.) As we discuss in text, we do not consider this an accurate representation of *Bertrand.*

We were unwilling to conclude, therefore, that the happenstance of a particular ownership or chartering arrangement should control the determination of seaman status as a matter of law. *Id.; see also Hall v. Diamond M Co.*, 732 F.2d 1246 (5th Cir. 1984).

We note as well that we did not in *Bertrand* reject the "totality of the circumstances" approach to the question of seaman status. Rather, we explicitly reiterated that the substantial work inquiry is dependent on the total circumstances of the claimant's employment, and noted that "[a]s the number of vessels increases or the period of service decreases, the claimant's relationship with the vessels tends to become more tenuous and transitory .... [T]o the extent that [the factors] reveal the nature and location of a claimant's work, they should be considered when applying the *Robison* criteria." 700 F.2d at 246 (citing *Fazio v. Lykes Bros. Steamship Co., supra*). Because the claimants in *Bertrand* spent one hundred per cent of their time performing vessel-related work; because their job was coextensive in time with the mission of the vessel; because their entire employment involved preparing to work or working from a vessel; because the evidence could reasonably have given rise to the conclusion that they were " 'continuously subject to the perils of the sea like blue water seamen and [were] engaged in classical seaman's work,' " 700 F.2d at 243 (quoting district court's opinion); and because they ate and slept aboard vessels and went to sea, we held that the *Bertrand* plaintiffs could have been found to have satisfied the substantiality prong of *Robison*, and summary judgment was improper.

In the instant case, by contrast, the lack of common ownership or control of the vessels upon which Buras worked was determined by the very nature of his employment, not by a fortuitous ownership or chartering arrangement within the control of his employer. Buras neither ate nor slept aboard a vessel, nor did he go to sea. He spent at least twenty-five per cent of his working time on land. He reported to his supervisor's house each morning to pick up his daily orders, and then went by truck to his assigned location. Moreover, Buras does not contend that he was assigned to an identifiable fleet, but rather to identifiable fleeting facilities. We have never held that such a relationship is sufficient to confer seaman status. *See, e.g., Fazio v. Lykes Bros Steamship Co., supra.* The aggregation of these factors clearly indicate that Buras is not entitled to seaman status.

Our conclusion here is buttressed by our decision in *Bouvier v. Krenz, supra,* decided just subsequent to *Bertrand.* There, we affirmed a summary judgment denying seaman status where the claimant was employed by a shipyard and performed construction and repair work on the various vessels that put in at the shipyard. In holding that the plaintiff could establish neither permanency nor substantiality, we noted that the *Robison* test was not to be applied mechanically, but rather used as a guide to determine whether the total circumstances of a claimant's employment could reasonably support the conclusion that the claimant was entitled to seaman status. Thus, we stated:

> While a worker can be a seaman with respect to a group of vessels where he would not be with respect to any single vessel in the group, *Braniff v. Jackson Ave.—Gretna Ferry, Inc.,* 280 F.2d 523 (5th Cir.1960), the work "must not be spasmodic and the relationship between the individual and the ... ships must be substantial in point of time and work." *Id.* at 528. Even if we assume *arguendo* that a group of vessels may permissibly be defined as the variously owned vessels putting into [the shipyard] for repairs, or even as the group of vessels on which Bouvier worked, *nevertheless Bouvier's work as a shore-bound ship repairman working for a shipyard does not make him a Jones Act seaman.* While perhaps none of the facts chronicled above with respect to his work would, taken alone, deny him seaman status as a matter of law, their aggregation does.

702 F.2d at 91 (emphasis added). In this case, similarly, it is clear that the aggregation of the circumstances of Buras' employment as a shore-based coal tester does not suffice to make him a Jones Act seaman. Thus, we hold that the district court's grant of summary judgment was proper.

AFFIRMED.