784 F.2d 732
 1987 A.M.C. 769
 Frederick F. PETERSEN, deceased, and Mary Jane Petersen,
individually and as Administratrix of the Estate
of Frederick F. Petersen,
Plaintiffs-Appellees, Cross-Appellants,
v.
The CHESAPEAKE AND OHIO RAILWAY COMPANY,
Defendant-Appellant, Cross-Appellee,
and
JOHNS-MANVILLE SALES CORPORATION, Third-Party Plaintiff,
v.
ARMSTRONG CORK COMPANY, the Celotex Corporation,
Owens-Corning Fiberglas Corporation,
Owens-Illinois Glass Company,
Eagle-Picher Industries, Inc.,
and Garlock, Inc.,
Third-
Party Defendants.
 Nos. 84-1557, 84-1598.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 28, 1985.
Decided Feb. 21, 1986.
 
 W. Fred Hunting, Jr., argued, David M. Thompson, Law, Weathers & Richardson, Grand Rapids, Mich., for defendant-appellant, cross-appellee.
 J. Walter Brock, argued, McCroskey, Feldman, Cochrane & Brock, Muskegon, Mich., for plaintiffs-appellees, cross-appellants.
 Charles F. Behler, Smith, Haughey, Rice & Roegge, Grand Rapids, Mich., for Armstrong Cork Co.
 Ronald E. Wagner, Kitch, Suhreheinrich, Smith, Saurbier & Drutchas, Detroit, Mich., for Owens-Corning Fiberglas Corp.
 William K. Holmes, Warner, Norcross & Judd, Grand Rapids, Mich., for Owens-Illinois Glass Co.
 Bruce M. Bieneman, Cholette, Perkins & Buchanan, Grand Rapids, Mich., for other third-party defendants.
 Before KEITH and MILBURN, Circuit Judges, and HIGGINS, District Judge*.
 MILBURN, Circuit Judge.
 
 
 1
 Defendant Chesapeake and Ohio Railway Company (C & O) appeals from a judgment in the amount of $235,500.00 entered on a jury verdict in this action arising from plaintiff's intestate's exposure to asbestos fibers while employed aboard the C & O's car ferries operating on the Great Lakes. Plaintiff, the Administratrix of the Estate of Frederick F. Petersen, deceased, sought recovery under general maritime law and under the Jones Act, 46 U.S.C. Sec. 688. 582 F.Supp. 1581. Plaintiff cross-appeals from the district court's denial of prejudgment interest. For the reasons that follow, we affirm.
 
 I.
 
 2
 Frederick F. Petersen began work for defendant C & O on May 26, 1941, and retired from C & O on May 26, 1978. His initial job was as a member of the crew of defendant C & O's car ferries, and he continued as a member of the car ferry crew until late 1950 when he took a position as a machinist in the marine shop. Although his position as a machinist was land based, Petersen continued to perform almost all of his duties on board the car ferries, and it is undisputed that his work required him to repair equipment and machinery while the car ferries were sailing between ports on the Great Lakes. As Petersen gained seniority in his position as a machinist, he was able to select work assignments which permitted him to repair most of the vessels in dry dock. However, there was proof introduced at the trial that Petersen continued to spend approximately thirty percent (30%) of his work time in sailing time while repairing the car ferry engines.
 
 
 3
 Petersen was exposed to asbestos products in different fashions, at different times, with different apparent levels of intensity of exposure, commencing in 1941 and continuing until the mid-1970's when asbestos products were no longer used by defendant C & O with reference to its Great Lakes operations. His exposure to asbestos was in replacing asbestos insulation covering pipes and equipment. Frederick F. Petersen died on June 26, 1979, as a result of lung difficulties related to his asbestos exposure.
 
 
 4
 Prior to his death, Petersen instituted this action against defendant C & O alleging that he was a seaman at the time of his injuries and was, therefore, entitled to the remedies provided for under the Jones Act, 46 U.S.C. Sec. 688. Petersen also asserted an unseaworthiness claim and a claim for wages, maintenance and cure under general maritime law.[1] Following Petersen's death, Mrs. Petersen, as administratrix of her husband's estate, was substituted for him as a party plaintiff. In the action filed by her husband, Mrs. Petersen asserted claims in her individual capacity for loss of society and companionship. However, during the course of the trial, the claims of Mrs. Petersen in her individual capacity and the claims for wages, maintenance and cure were voluntarily dismissed.
 
 
 5
 C & O argued in the district court and now argues that the sole basis for jurisdiction for any and all claims on behalf of the decedent was the workers' compensation program provided by the Longshoremen's and Harborworkers' Compensation Act ("the LHWCA"), 33 U.S.C. Sec. 901, et seq. The district court held that there was sufficient indicia of decedent's status as a Jones Act seaman at the time of his injury to raise factual questions for the jury to determine, and noted that plaintiff's complaint contained sufficient allegations to invoke the district court's jurisdiction under 28 U.S.C. Sec. 1331, federal question jurisdiction; 28 U.S.C. Sec. 1332, diversity jurisdiction; and 28 U.S.C. Sec. 1333, admiralty and maritime jurisdiction.
 
 
 6
 Additionally, C & O moved the district court to preclude introduction of evidence concerning decedent's exposure to asbestos prior to January 24, 1976, and, further, to exclude all evidence of decedent's employment status prior to January 24, 1976, contending that the evidence would be barred by the three-year statute of limitations under the Jones Act. These motions were overruled by the district court.
 
 
 7
 During the course of the trial, C & O moved for a mistrial alleging that introduction of the following testimony constituted reversible error.
 
 
 8
 Q. [By plaintiff's counsel] How long has the disease asbestosis been well-known in the medical literature?
 
 
 9
 A. [By Dr. Vernon Dodson] Well, it wasn't generally recognized as a disease until certain individuals had been aware of association between asbestos exposure and lung disease in the early part of the century. But certainly by the 1920s it was a well-recognized entity and, indeed, our own Dr. Carey P. McCord at the University of Michigan, former doctor of medicine at the Chrysler Company, had written extensively in the 1920s. He also belonged to an exclusive organization known as the Railroad Occupational and Medical Directors Association and at those meetings had discussed this widely.
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 Q. [By counsel for C & O] And did you make any studies to determine whether there has been any other documented cases of asbestosis among C & O workers in Ludington?A. [By Dr. Vernon Dodson] What I have done is to review the information that was given to me. Mr. Brock has indicated that there are two other employees who have had lung diseases resembling asbestosis who worked with this man.
 
 
 13
 Counsel for C & O objected to the first question as an attempt to use the expert's qualifications to show that C & O should have known of the medical consequences of asbestos exposure in the 1920's. The district judge subsequently instructed the jury to disregard Dr. Dodson's testimony regarding the medical conference in the 1920's and his testimony concerning other incidents of asbestos-related injuries among C & O workers.
 
 
 14
 At the close of plaintiff's proof and at the end of all proof, C & O entered motions for directed verdicts as to all issues. These motions were overruled, and the jury found for plaintiff. The jury verdict form submitted to the jury required it to answer the following special interrogatory: "Was Mr. Petersen a seaman at the time he was exposed to asbestos and did that exposure while a seaman cause asbestosis?" The jury answered in the affirmative. Following the jury verdict, the district court overruled C & O's motion for judgment n.o.v. Plaintiff's motion for prejudgment interest was likewise overruled.
 
 II. DEFENDANT'S APPEAL
 A. Subject Matter Jurisdiction
 
 15
 C & O contends that the district court was without subject matter jurisdiction to entertain the instant action. C & O's argument rests on the proposition that admiralty jurisdiction is improper, as a matter of law, where a maritime worker suffers an asbestos-related injury. Invocation of admiralty jurisdiction in cases involving maritime torts requires that the tort take place on navigable waters and that the tort arise in the course of traditional maritime activities. See Foremost Insurance Co. v. Richardson, 457 U.S. 668, 675, 102 S.Ct. 2654, 2658, 72 L.Ed.2d 300 (1982). See also Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972). Other Courts of Appeals have held that admiralty jurisdiction does not extend to asbestos-related claims by land-based ship repair or construction workers because the claims bear no significant relationship to traditional maritime activities. See Oman v. Johns-Manville Corp., 764 F.2d 224 (4th Cir.1985); Woessner v. Johns-Manville Sales Corp., 757 F.2d 634 (5th Cir.1985); Myhran v. Johns-Manville Corp., 741 F.2d 1119 (9th Cir.1984); Harville v. Johns-Manville Products Corp., 731 F.2d 775 (11th Cir.1984); Keene Corp. v. United States, 700 F.2d 836 (2d Cir.1983), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); Owens-Illinois, Inc. v. United States District Court, 698 F.2d 967 (9th Cir.1983). These courts concluded that because the tasks performed and injuries incurred by the involved workers were identical to those of asbestos workers who have never stepped aboard a vessel, the litigation presented issues of tort law traditionally committed to local resolution and did not require development or application of uniform federal maritime law. Oman, 764 F.2d at 231; Woessner, 757 F.2d at 648; Myhran, 741 F.2d at 1122; Harville, 731 F.2d at 785; Owens-Illinois, 698 F.2d at 970-71. We concur in these decisions and hold that, given the rationale of the above decisions, the decedent's complaint in the instant case was insufficient to invoke the district court's admiralty jurisdiction.
 
 
 16
 However, our determination that the district court could not exercise admiralty jurisdiction does not mean that the district court lacked subject matter jurisdiction over the instant action. "The Jones Act permits any seaman who suffers personal injuries in the course of his employment or the personal representative of a deceased seaman to sue his employer at law for damages in a federal district court, without invoking admiralty jurisdiction." 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3677 (1984). A suit under the Jones Act may be brought as a federal question case under 28 U.S.C. Sec. 1331. Romero v. International Terminal Operating Co., 358 U.S. 354, 359, 79 S.Ct. 468, 473, 3 L.Ed.2d 368 (1959); Panama R. Co. v. Johnson, 264 U.S. 375, 383-84, 44 S.Ct. 391, 392-93, 68 L.Ed. 748 (1924); Cruz v. Maritime Co. of Philippines, 702 F.2d 47, 48 (2d Cir.1983); Powell v. Offshore Navigation, Inc., 644 F.2d 1063, 1068 (5th Cir.), cert. denied, 454 U.S. 972, 102 S.Ct. 521, 70 L.Ed.2d 391 (1981); Wade v. Rogala, 270 F.2d 280, 283 (3d Cir.1959); Branic v. Wheeling Steel Corp., 152 F.2d 887, 890 (3d Cir.1945); Gavalek v. Coscol Petroleum Corp., 491 F.Supp. 188, 190 n. 2 (E.D.Mich.1979). See generally 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3563 (1985). As the Court stated in Romero, where a plaintiff asserts that the Jones Act affords him a right to recover damages for injuries resulting from the negligence of his employer, the district court has subject matter jurisdiction over the case to determine whether the statute provides the claimed rights. 358 U.S. at 359, 79 S.Ct. at 473.
 
 
 17
 A plaintiff may join his claim for negligence under the Jones Act with a general maritime claim for unseaworthiness. See generally 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3677 (1985). In Romero the plaintiff brought general maritime claims and Jones Act claims against the employer. The Court held that the general maritime claims against the employer could be heard, pendent to the district court's section 1331 jurisdiction over the Jones Act claim. 358 U.S. at 381, 79 S.Ct. at 485. Thus, we conclude that in the instant case the district court had subject matter jurisdiction of both the Jones Act claim and the unseaworthiness claim.
 
 
 18
 C & O argues that to find subject matter jurisdiction in the instant case would be contrary to the Fifth Circuit's decision in Bouvier v. Krenz, 702 F.2d 89 (5th Cir.1983). We disagree. In Bouvier a widow brought a Jones Act suit against the employer of her deceased husband. The decedent had been employed as a rigger in a shipyard and the complaint alleged that he died as a result of inhalation of asbestos particles in the shipyards. The court held the plaintiff's decedent's five-year stint as a rigger did not make him a Jones Act seaman. The sole issue in Bouvier was whether the plaintiff was a Jones Act seaman. Contrary to defendant's assertions, Bouvier did not address the relationship between admiralty jurisdiction and asbestos-related claims. Moreover, we are not aware of any court decision which has held that the absence of admiralty jurisdiction requires the dismissal of a Jones Act claim for want of subject matter jurisdiction.
 
 B. Seaman Status
 
 19
 C & O contends that the district court committed reversible error by permitting the jury to determine the decedent's status as a Jones Act seaman. However, the question of a plaintiff's status as a seaman is ordinarily a question of fact. Searcy v. E.T. Slider, Inc., 679 F.2d 614, 616 (6th Cir.1982). A district court may determine seaman status, as a matter of law, only where there is no reasonable evidentiary basis to support a jury finding that the plaintiff is a seaman. See Longmire v. Sea Drilling Corp., 610 F.2d 1342, 1346 (5th Cir.1980); Owens v. Diamond M Drilling Co., 487 F.2d 74, 76 (5th Cir.1973). Although the Jones Act does not define the term "seaman," this court has applied the following test to determine whether an employee is a seaman: "(1) is the vessel in navigation, (2) does the employee have a more or less permanent connection with the vessel, and (3) was the employee on board the vessel primarily in aid of navigation?" Searcy, 679 F.2d at 616.
 
 
 20
 In Searcy the plaintiff was a night watchman whose duties consisted of watching and maintaining security on the premises of a sand and gravel business along the banks of the Ohio River and whose duties required him to go on board the vessel approximately once every two hours to check on and put gas in the pumps that were pumping water from leaking barges. These responsibilities, however, did not require the watchman to eat, sleep, or reside on any of the vessels at any time. The district court granted summary judgment for defendant on the issue of plaintiff's status as a seaman, and we reversed stating:
 
 
 21
 The following facts might justify a jury finding that the decedent was permanently connected with the vessels: decedent's duties required him to keep a vigil over the vessels; decedent's duties required him to board the vessels and to check and fill the gas pumps that bailed the leaking vessels and to check all the moored vessels for leakage; decedent's responsibilities required him at various times to go aboard the vessels to place light on the barges.
 
 
 22
 679 F.2d at 616-17. Moreover, we rejected the district court's statement that there is a general tendency to deny seaman status to land-based workers providing land-based services to docked vessels for failure to meet the permanent connection requirement. Id.
 
 
 23
 In the instant case, it is undisputed that the decedent repaired equipment while the car ferries were sailing between ports on the Great Lakes. It is also undisputed that, even though the machinist's position was land based, decedent performed almost all of his duties aboard defendant's vessels. Thus, there was a sound evidentiary basis from which the jury could conclude that decedent satisfied the permanent connection requirement for seaman status. Cf. Searcy, 679 F.2d at 616-17.
 
 
 24
 Further, a reasonable jury could conclude that the C & O car ferries were "in navigation" and that decedent, as a machinist, was on board the car ferries "primarily in aid of navigation." If a vessel "is engaged as an instrument of transportation or commerce on navigable waters, that vessel is 'in navigation' although moored to a pier, in a repair yard for periodic repairs or while temporarily attached to some object." Griffith v. Wheeling Pittsburgh Steel Corp., 521 F.2d 31, 37 (3d Cir.1975), cert. denied, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976). One who works aboard a ship "in navigation" satisfies the "in aid of navigation requirement" if his duties contribute to operation of the vessel. See Wilkes v. Mississippi Sand and Gravel Co., 202 F.2d 383, 341 (6th Cir.1953). See also Lewis v. Traego & Sons, 501 F.2d 372, 374 (4th Cir.1974). C & O's car ferries were engaged in transportation on the Great Lakes and a jury could reasonably conclude that their maintenance while sailing between ports contributed to their continued operation.
 
 
 25
 C & O argues that the first question on the jury verdict form ("Was Mr. Petersen a seaman at the time he was exposed to asbestos and did the exposure while a seaman cause asbestosis?") was presented in a manner which required the jury to conclude that decedent was a seaman. We cannot agree. The question required the jury to first determine whether decedent was a seaman at the time of his exposure to asbestos. If the jury found that decedent was exposed to asbestos while he was a seaman, the question required the jury to then decide whether decedent's exposure while a seaman caused asbestosis. While we recognize that the question could have been more artfully drawn, we do not believe that its particular phraseology impermissibly impacted upon the jury's determination of whether or not decedent was a seaman for purposes of the Jones Act.
 
 C. LHWCA
 
 26
 C & O argues that the plaintiff's sole remedy in the instant action was under the LHWCA. With respect to coverage, the Jones Act and the LHWCA are mutually exclusive. See, e.g., Buras v. Commercial Testing and Engineering Co., 736 F.2d 307, 309 (5th Cir.1984); Bertrand v. International Mooring & Marine, Inc., 700 F.2d 240, 243 (5th Cir.1983), cert. denied, 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984). The Jones Act permits recovery for "any seaman" who suffers personal injury in the course of his employment, whereas the LHWCA extends to all maritime workers except "a master" or "a member of a crew of any vessel." The terms "seaman" and "member of a crew" are used interchangeably. See, e.g., Buras, 736 F.2d at 309; Bertrand, 700 F.2d at 243 n. 7; Guidry v. South Louisiana Contractors, Inc., 614 F.2d 447, 452 n. 2 (5th Cir.1980). A plaintiff is not limited to the remedies available under the LHWCA unless he is unable to show that a genuine factual issue exists as to whether he was a seaman at the time of his injury. See e.g., Buras, 736 F.2d at 309; McDermott, Inc. v. Boudreaux, 679 F.2d 452, 459 (5th Cir.1982), Longmire, 610 F.2d at 1345. In the instant case, because there was substantial evidence from which the jury could conclude that decedent was a Jones Act seaman, decedent was not limited to the remedies available under the LHWCA.
 
 
 27
 C & O argues that the district court's refusal to explain the LHWCA benefits permitted the jury to believe that plaintiff's only source of recovery was a seaman's remedy. C & O further argues that this error was compounded by the jury verdict form which did not require the jury to consider the availability of the LHWCA benefits. We do not, however, believe that the jury should have been instructed to consider the LHWCA benefits. Plaintiff demonstrated that decedent was entitled to recovery under the Jones Act, and, consequently, the fact that he might have recovered under the more burdensome provisions of the LHWCA is irrelevant. Cf. Buras, 736 F.2d at 309; McDermott, 679 F.2d at 459; Longmire, 610 F.2d at 1345.
 
 D. Statute of Limitations
 
 28
 For the purposes of statute of limitations analysis, the district court found that decedent's cause of action accrued when he knew or should have known that he suffered from asbestosis. On the other hand, the district court required the jury to determine decedent's status as a seaman at the time he was exposed to asbestos. C & O argues that the district court erred in refusing to employ a single time frame for both determinations and that decedent's status as a seaman should have been determined at or near the time his cause of action accrued.
 
 
 29
 Defendant's argument is without merit. Under the Jones Act, a plaintiff's status as a seaman is determined at the time of his injury. See Longmire, 610 F.2d at 1345. In asbestos-related cases, injury occurs when asbestos fibers are inhaled even though the injury does not manifest itself in the form of asbestosis until many years later. See Insurance Co. of North America v. Forty-Eight Insulations, Inc., 633 F.2d 1212, 1218 (6th Cir.1980), aff'd on rehearing, 657 F.2d 814 (6th Cir.1981), cert. denied, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1982). See also Keene Corp. v. Insurance Co. of North America, 667 F.2d 1034, 1040 (D.C.Cir.1981), cert. denied, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982). Thus, in the instant case it was not error for the district court to instruct the jury to determine decedent's status as a seaman at the time of his exposure to asbestos.
 
 
 30
 Defendant also argues that the district court erred in not holding decedent's unseaworthiness claim barred by laches. Defendant asserts that decedent learned that he was suffering from asbestosis in 1974 and that defendant was prejudiced by decedent's unwarranted five-year delay in filing suit. Hospital records introduced at trial indicated that Dr. Richard Rasmussen diagnosed decedent's illness as asbestosis in 1974. However, Dr. Rasmussen testified that he did not diagnose asbestosis and, further, that he did not discuss the possibility of asbestosis with decedent. Dr. Yung-In-Choi testified that he diagnosed decedent's illness as asbestosis in July 1978. Decedent filed the instant action on January 24, 1979. Contrary to defendant's assertions, the evidence clearly supports a determination that decedent filed this action only a few months after learning that he suffered from asbestosis.
 
 E. C & O's Remaining Arguments
 
 31
 C & O's remaining arguments are without merit. We do not believe that the two statements of Dr. Dodson irreversibly prejudiced defendant's case. The impact of Dr. Dodson's testimony concerning other asbestos-related cases was indeed limited. First, and most importantly, an instruction to disregard the testimony was given. Second, Dr. Dodson testified that his knowledge concerning the other asbestos cases resulted from information given to him by plaintiff's counsel. He conceded that he had no personal knowledge about any other situation involving a C & O employee contracting asbestosis. Lastly, Dr. Dodson's testimony was inconsistent with the testimony of other doctors testifying at the trial.
 
 
 32
 The impact of Dr. Dodson's testimony concerning the Railroad Occupational and Medical Directors Association conference was also limited. The jury was instructed to disregard the testimony. Moreover, we do not interpret the testimony to imply that C & O was a member of the Association or that it had knowledge of matters discussed at the meetings.
 
 
 33
 Furthermore, the trial court did not err in refusing to grant C & O's motion for a directed verdict on the question of C & O's negligence. In order to recover under the Jones Act, a seaman need only prove "slight negligence" which can be accomplished by very little evidence. Allen v. Seacoast Products, Inc., 623 F.2d 355, 360 (5th Cir.1980). See also Bennett v. Perini Corporation, 510 F.2d 114, 117 (1st Cir.1975) ("The Jones Act is to be construed remedially, and ... the threshold of evidentiary sufficiency is somewhat lower than in tort actions at common law.") A directed verdict should be granted " 'only when there is a complete absence of probative facts' supporting the nonmovant's position." Allen, 623 F.2d at 360 (quoting Boeing Co. v. Shipman, 411 F.2d 365, 371 (5th Cir.1969) (en banc )). Applying these standards, there was sufficient evidence of C & O's negligence to go to the jury. There was testimony that the relationship between asbestos exposure and lung disease was known in the early 1920's. Furthermore, there was testimony that in the early 1960's United States Coast Guard inspectors who came in contact with asbestos aboard the ferries used masks and respirators. This testimony would support an inference that the harmful consequences of asbestos exposure were foreseeable during the period decedent was employed aboard the car ferries.
 
 III. PLAINTIFF'S CROSS-APPEAL
 
 34
 In addition to the damages awarded by the jury, plaintiff's cross-appeal requests this court to award prejudgment interest from the date of filing of the complaint to the date of the entry of judgment. This court has previously held that prejudgment interest may not be awarded in a Jones Act case. See Petition of United States Steel Corporation, 436 F.2d 1256, 1279 (6th Cir.1970); Cleveland Tankers v. Tierney, 169 F.2d 622 (6th Cir.1954). Plaintiff contends, however, that where the claim is unseaworthiness, prejudgment interest should be awarded if state law provides for prejudgment interest in analogous cases. It is not necessary, however, for this court to reach that issue.
 
 
 35
 Where a general maritime claim is tried to a jury, the grant or denial of prejudgment interest must be submitted to the jury. Robinson v. Pocahontas, Inc., 477 F.2d 1048, 1052-53 (1st Cir.1973); Havis v. Petroleum Helicopters, Inc., 664 F.2d 54, 55 (5th Cir.1981). Robinson, like the instant case, involved a suit to recover damages for negligence under the Jones Act and for unseaworthiness under general maritime law. The plaintiff did not include a demand for interest in his complaint and did not ask that the jury be instructed that it might award prejudgment interest. The jury awarded damages, and the district court added prejudgment interest. The Fourth Circuit reversed, stating that "the trial court's award of prejudgment interest ... violated the province of the jury." Havis expressly adopted the rationale of Robinson and held that once an unseaworthiness claim is tried to a jury, the trial court may not award prejudgment interest. 664 F.2d at 55.
 
 
 36
 Even if prejudgment interest could be awarded by the court after the unseaworthiness claim is submitted to the jury, such an award would not be warranted in this case. The jury's verdict does not disclose whether the damage award was based upon the Jones Act or upon the unseaworthiness claim. Where it is impossible to determine if the damages awarded relate only to the unseaworthiness claim, prejudgment interest will not be awarded at all. See Wyatt v. Penrod Drilling Co., 735 F.2d 951, 956 (5th Cir.1984).
 
 IV.
 
 37
 For the reasons stated herein, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Thomas A. Higgins, Judge, United States District Court for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 Petersen originally joined Johns-Manville Corporation and Johns-Manville Sales Corporation as defendants. However, the claims against Johns-Manville were severed by the district court after Johns-Manville sought protection from creditors in bankruptcy