580 So.2d 482 (1991)
Guy S. FOLSE and Debra K. Folse, Individually and on Behalf of the Minor Children, Tiffany, Kristina, Stephanie, Paige, Guy S. Jr., Jason Michael and Nicholas Anthony Folse
v.
WESTERN ATLAS INTERNATIONAL, INC./DOWNHOLE SEISMIC SERVICES, Tidex, Inc., Tidewater Ventures, Inc. and Amoco Production Company.
No. 90-CA-2083.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1991.
Gainsburgh, Benjamin, Fallon, David & Ates, J. Mac Morgan, New Orleans, for plaintiff-appellants Guy S. Folse, et al.
Joseph G. Gallagher, Jr., James A. Oswald, Hulse, Nelson & Wanek, New Orleans, for defendants-appellees Western Atlas Intern., Inc., et al.
Before KLEES, CIACCIO and PLOTKIN, JJ.
KLEES, Judge.
Plaintiff Guy S. Folse, his wife and children filed this lawsuit seeking damages under the Jones Act for personal injuries allegedly sustained by Folse while he was in the employ of defendant Downhole Seismic Services, a division of Western Atlas International, Inc. Defendant moved for *483 summary judgment on the grounds that Folse was not a Jones Act seaman entitled to maintain such an action. The district court granted the motion, and plaintiffs have appealed. We affirm.
The facts of this case are as follows.
Guy Folse was employed by Downhole Seismic Service [D.S.S.] as a seismic operator. The company conducts borehole seismic surveys, both onshore and offshore, for its customers. Folse was responsible for the mobilization, operation, attendance and demobilization of a seismic airgun marine towing system. He spent 46% (employer's affidavit) to 50% (Folse's affidavit) of his time offshore performing this work aboard vessels which were generally owned or chartered by the various customers of DSS; the remainder of Folse's time was spent at DSS's Harvey office preparing and repairing seismic equipment. The general policy of DSS is to have the customer furnish the vessel for an offshore job; if the customer does not have a vessel available, DSS will attempt to charter a vessel. During his career, Folse worked aboard numerous vessels owned by numerous different customers of DSS, including Shell, Exxon, Amoco, Chevron, Tenneco, Mobil, and various other oil companies.
On August 29, 1989, Folse was injured when an airgun rack fell onto his feet while he was working aboard the M/V Hosea Tide, which was docked at Port Fourchon, Louisiana. At the time of the accident, the M/V Hosea Tide was under charter to Amoco Production Company, a customer of DSS.
To qualify as a Jones Act seaman, a worker must meet two criteria: (1) he must perform a substantial amount of his work aboard a vessel or be permanently assigned to a vessel or fleet of vessels; and (2) his work must contribute to function of the vessel or to the accomplishment of its mission. Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067, 1072-74 (5th Cir.1986) (en banc); Offshore Company v. Robison, 266 F.2d 769 (5th Cir.1959). In this context, "fleet" of vessels means "an identifiable group of vessels acting together or under one control." Barrett v. Chevron, U.S.A., Inc., supra, at 1074. The Barrett court specifically held that "fleet" does not mean "any group of vessels an employee happens to work aboard." Id.
Although the determination of seaman status under the Jones Act is inherently a factual question, if the requisite proof is absent, a court may decide that seaman status is lacking as a matter of law. New v. Associated Painting Services, Inc., 863 F.2d 1205, 1207 (5th Cir.1989) citing Robison, supra. In the instant case the district court found that there were no genuine issues of material fact, and that plaintiff Folse could not qualify as a Jones Act seaman as a matter of law. We agree.
The seminal case relied upon by plaintiffs to support seaman status is Bertrand v. International Mooring & Marine, Inc., 700 F.2d 240 (5th Cir.1983), cert. denied, 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984), in which the court overturned a summary judgment denying seaman status to anchorhandlers who performed their work on vessels not owned by their employer, but who clearly satisfied the other criteria for seaman status. The Bertrand decision was further explained by Buras v. Commercial Testing & Engineering Co., 736 F.2d 307 (5th Cir.1984). The Buras Court stated:
Although Bertrand thus expanded the concept of a fleet to encompass vessels used, but not owned or chartered, by the employer, we do not believe that it can fairly be read so broadly as to confer seaman status on every worker whose duties place him aboard a large number of randomly-owned and controlled vessels for short periods of time that aggregate to comprise a substantial portion of his working time, nor do we believe that Bertrand rejected the identifiable or recognizable fleet requirement established by our prior cases. Rather, Bertrand must be read in light of the factual situation it involved. Our concern there was to prevent the denial of Jones Act seaman status as a matter of law to those claimants who are engaged in traditional maritime activity on a vessel or vessels comprising an identifiable fleet in every *484 respect except common control of ownership.
736 F.2d at 311.
The Bertrand court itself noted that the number of vessels worked on, as well as the period of service on each vessel, must be taken into account; as the number of vessels increases or the period of service decreases, the claimant's relationship with the vessels tends to become more tenuous and transitory. Bertrand, supra, at 246.
In this instance, we agree with the district court that the facts are clearly distinguishable from those in Bertrand. In Bertrand, plaintiffs performed traditional maritime work as anchorhandlers and spent virtually all their time aboard vessels. As the district court noted, Folse spent (at most) half of his time aboard vessels, and his work was primarily of a scientific nature. He performed an isolated task on numerous vessels for many different oil companies.
Plaintiffs argue strenuously that the district court erred in finding that Folse's seismic work was not of a maritime nature. However, in a very recent case, the Fifth Circuit has held that a compulsory river pilot, who performed traditional seaman's work and did all of his work aboard vessels, was not a Jones Act seaman because he was not permanently assigned to a vessel or fleet of vessels; the vessels he worked aboard did not constitute a fleet because they did not conform to the Barrett definition requiring common ownership or control. Bach v. Trident Steamship Co., Inc., 920 F.2d 322, 324 (5th Cir.1991). The Bach court rejected plaintiff's claim that the vessels were a fleet because each was under his control during the time he piloted it. Id. The court specifically held that workers who perform traditional seaman's work on a large number of unconnected vessels are not exempt from the "fleet" requirement for seaman status. Therefore, even if plaintiff Folse's work were considered to be traditionally maritime, he would still fail the test for seaman status because the vessels he worked aboard did not constitute a fleet. The Bach decision suggests that the court will continue to adhere strictly to the vessel connection requirement of Robison/Barrett and that Bertrand will be confined to its facts. Considering those facts, Bertrand does not apply to the instant situation.
Finally, plaintiff argues that the district court's judgment should be overturned in light of the U.S. Supreme Court's recent decision in McDermott International, Inc. v. Wilander, 498 U.S. ___, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). In that case, the Court held that a person need not aid in the navigation of a vessel to qualify as a seaman under the Jones Act. The case involved a painter who was the foreman of a "paint boat." We find the case inapplicable to the instant situation, however, because it does not deal with the fleet requirement. Regardless of whether Folse performed traditional maritime work, he fails to meet the test for seaman status because he was not permanently attached to a vessel or fleet of vessels.
Accordingly, for the reasons stated, we affirm the judgment of the district court dismissing plaintiffs' action.
AFFIRMED.
PLOTKIN, J., dissents with reasons.
PLOTKIN, Judge, dissenting with reasons:
I respectfully dissent because a jury, not a summary judgment in favor of the defendant, should decide whether Guy Folse was a Jones Act seaman.
The majority defines the standard for the seaman's status of an injured worker. They concluded that Folse met all the requirements except for assignment to a vessel or an identifiable "fleet of vessels." This conclusion is based upon affidavits which show that Folse worked 46% or 50% of his work time aboard vessels as a seismic operator.
The Jones Act is remedial legislation which is liberally construed in favor of the protection of seamen. Cox v. Roth, 348 U.S. 207, 210, 75 S.Ct. 242, 244, 99 L.Ed. 260 (1955). The question of seaman status is a mixed question of law and fact. It is *485 rarely so clear that the issue should be removed from the jury. Graham v. Milky Way Barge, Inc., 824 F.2d 376, 389 (5th Cir.1987).
Barrett defines the standard for an identifiable fleet of vessels. "By fleet we mean an identifiable group of vessels acting together or under one control." Barrett, 781 F.2d 1067, 1074 (5th Cir.1986).
In the instant case, all the vessels on which Folse worked were borrowed from customers of DDS when available, or else chartered. Thus it would seem that all of these vessels were under the control of DDS. If the vessels were under common control, then Folse would meet this prong of the test for seaman status.
The Bach decision, discussed in the majority opinion, holds that a river pilot who worked on a different vessel every day with no common nexus of control except his own presence as a pilot did not meet the identifiable fleet of vessels requirement. Bach v. Trident Steamship Co., 920 F.2d 322, 325 (5th Cir.1991). The Fifth Circuit declined to extend the meaning of fleet in this case. Id.
The three cases cited by Bach in its discussion of the fleet requirement all concerned wireline operators on oil rigs which were not under common control. Ardleigh v. Schlumberger Ltd., 832 F.2d 933 (5th Cir.1987); Lirette v. N.L. Sperry Sun, Inc., 831 F.2d 554 (5th Cir.1987); Langston v. Schlumberger Offshore Services, Inc., 809 F.2d 1192 (5th Cir.1987). The court held that the vessels in all of these cases were not under common control or any other common nexus. The "evidence [did] not suggest that these vessels were commonly controlled or had any other nexus that would support a finding that they were a fleet." Lirette, 831 F.2d at 536, quoting Langston, 809 F.2d at 1194. These situations are quite distinguishable from that in the instant case.
The question of the common control of the vessels on which Folse worked is a disputed issue of law and fact. Therefore summary judgment in this case was inappropriate and this question should have gone to the jury.
For the above reasons, I respectfully dissent.