Charlene LANGSTON,
Plaintiff-Appellant,

v.

SCHLUMBERGER OFFSHORE SERVICES, INC., Defendant-Appellee.

No. 86–3585
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 17, 1987.

Lester J. Waldmann, Overton T. Harrington, Jr., Gretna, La., for plaintiff-appellant.

Charles A. Simmons, New Orleans, La., for defendant-appellee.

Before REAVLEY, JOHNSON and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Charlene Langston sued her employer, Schlumberger Offshore Services, Inc. (Schlumberger) to recover damages for injuries she sustained while working as a wireline operator on a drilling vessel, the TELEDYNE MOVIBLE 17, off the coast of Louisiana. The district court granted Schlumberger's motion for summary judgment and dismissed Langston's suit against Schlumberger on grounds that she was not a seaman, but rather a maritime worker covered by the Longshore and Harbor Workers' Compensation Act, 33 USC § 901 (LHWCA). We find no error and affirm.

## I.

Langston was employed by Schlumberger as a wireline operator and worked on a Schlumberger logging crew consisting of herself, another operator and an engineer.

A wireline logging crew is equipped and trained to obtain data from a partially drilled oil or gas well that helps the well owner determine the location and amount of oil or gas likely to be found. The logging crew gathers its data by lowering sensitive geophysical instruments into the well; these instruments make measurements that are transmitted to the surface and recorded or "logged."

Langston's crew was one of approximately twenty crews working for Schlumberger out of its Belle Chasse District. These crews worked in rotation so that the current job assignment was given to the crew that had been inactive the longest. As jobs were requested by customers the dispatcher assigned the crew eligible for the job. When a crew completed a job their names went to the bottom of the rotation list and they would then wait until their names worked their way to the top of the list for another job.

At the time of her injury, Langston had been employed by Schlumberger as a wireline operator for approximately two years and nine months. During this time she performed her work on land, stationary platforms and vessels. Whether a particular job was on land or water ordinarily depended entirely upon her position on the rotation roster.

Between June 15, 1983, and December 1, 1983, Langston worked exclusively in the shop loading wireline guns. In December 1983, she resumed her previous position as a wireline operator.

Taking her entire employment with Schlumberger from 1981 through 1984, the summary judgment evidence reveals that she performed approximately 21% of her work on vessels and 79% of her work on stationary platforms and land. From December 1983 when Langston left her job in the shop and returned to work as a wireline

operator until her accident in December 1984, the summary judgment evidence reveals that she worked 32% of her time on vessels and 68% on platforms and land. During this period, Ms. Langston worked in the shop approximately 55% of her work time. She worked on twenty-five different wireline jobs, eighteen of which were on vessels. These eighteen jobs on vessels were for ten different customers aboard fifteen distinct vessels.

Based upon these uncontested facts, the district court granted Schlumberger's motion for summary judgment on grounds that Langston was not a seaman. Langston argues on appeal that a question of fact was presented as to whether her work aboard the vessels described above entitled her to seaman status.

### II.

In reviewing a summary judgment we apply the familiar standard:

This Court must view the evidence and the inferences to be drawn therefrom in the light most favorable to the party opposing the motion. When viewed in this light, we must determine whether there is any genuine issue as to any material fact and whether the movant is entitled to summary judgment as a matter of law.

*Coulter v. Texaco, Inc.*, 714 F.2d 467, 468 (5th Cir.1983).

We assume for our purposes that Langston started a new job assignment when she was transferred from the shop to a wireline logging crew in December 1983. *In re Patton-Tully Transp. Co.*, 797 F.2d 206 (5th Cir.1986). From the time she started her new assignment until her accident, Langston performed approximately 32% of her work on fifteen different vessels owned by ten unrelated owners.

The critical issue presented by this appeal is whether Langston performed a substantial portion of her work aboard a vessel or a fleet of vessels. *Barrett v. Chevron, USA, Inc.*, 781 F.2d 1067, 1074 (5th Cir. 1986) (en banc). The district court correctly answered this question in the negative.

We carefully defined "fleet" in *Barrett:*

By fleet we mean an identifiable group of vessels acting together or under one control. We reject the notion that fleet of vessels in this context means any group of vessels an employee happens to work aboard. Unless fleet is given its ordinary meaning, the fundamental distinction between members of a crew and transitory maritime workers such as longshoremen is totally obliterated.

*Id.* at 1074.

The group of vessels Langston worked aboard simply does not qualify as a fleet as we have defined that term. She was assigned to work aboard fifteen different vessels owned by ten different owners; thus the summary judgment evidence does not suggest that these vessels were commonly controlled or had any other nexus that would support a finding that they were a fleet.

Because no genuine issue of material fact is raised by the summary judgment evidence, the judgment of the district court is

AFFIRMED.