**Norris LIRETTE, Plaintiff-Appellant,**

v.

**N.L. SPERRY SUN, INC. and Quarles Drilling Company, Defendant-Appellees.**

**No. 86–3373.**

United States Court of Appeals, Fifth Circuit.

Nov. 5, 1987.

Gayle A. Reynolds, Gretna, La., for Lirette.

Timothy F. Burr, New Orleans, La., for Sperry.

Elizabeth H. Ryan, Wood Brown, III, New Orleans, La., for Quales Drilling.

Before CLARK, Chief Judge, GOLDBERG and GEE, Circuit Judges.

PER CURIAM:

Norris Lirette appeals the district court's dismissal of his Jones Act claims against N.L. Sperry Sun, Inc. and Quarles Drilling Company. Finding that Lirette was not a Jones Act seaman because he was not assigned to an identifiable vessel or fleet of vessels, we affirm.

## I.

This appeal reaches us through a circuitous route. Norris Lirette filed a claim under the Jones Act, 46 U.S.C. § 688, in March 1985 in state court for injuries he sustained on board an offshore drilling rig. The defendants, Sperry and Quarles, removed the case to federal court. The district court dismissed Lirette's Jones Act and unseaworthiness claims on summary judgment but reserved any claims against Quarles under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–50. On appeal, an administrative panel of this court *sua sponte* ruled that the case was improperly removed to federal court and remanded it to state court. *See Lirette v. N.L. Sperry Sun, Inc.*, 810 F.2d 533 (5th Cir.1987). The panel felt bound by *Gamble v. Central of Georgia Railway*, 486 F.2d 781 (5th Cir. 1973) in which the court held that 28 U.S.C. § 1445(a) divests district courts of subject matter jurisdiction over FELA and Jones Act claims filed in state court. In March 1987, the court ordered the case reheard *en banc*. Upon rehearing, the court overruled *Gamble* insofar as it deprived the district court of jurisdiction and held that a Jones Act plaintiff who has selected a state forum waives his right to invoke 28 U.S.C. § 1445(a) when he fails to object to removal of an action to a district court which otherwise has subject matter jurisdiction. *See Lirette v. N.L. Sperry Sun, Inc.*, 820 F.2d 116, 118 (5th Cir.1987). The court *en banc* then remanded to the panel for consideration of Lirette's appeal from summary judgment. We now consider his appeal on the merits.

## II.

Although the issue of Jones Act seaman status is left to the jury in all but rare circumstances, summary judgment is proper in cases where the underlying facts are undisputed and the record reveals no evidence from which reasonable persons could draw conflicting inferences. *Abshire v.*

*Seacoast Products, Inc.*, 668 F.2d 832, 835 (5th Cir.1982); *Guidry v. South Louisiana Contractors, Inc.*, 614 F.2d 447, 454 (5th Cir.1980). If there is no evidence supporting the requisites of seaman status, the district court may enter summary judgment for the defendant as a matter of law. *Abshire*, 668 F.2d at 835. In this case the district court correctly concluded that undisputed facts indicate Lirette was not a Jones Act seaman.

Norris Lirette was employed by Sperry as a wireline operator. His duties included surveying oil wells and operating wireline and steering tools both on shore and on moveable drilling rigs offshore. Sperry does not own or lease any offshore rigs or vessels but rather is an independent contractor which sends workers to any concern requesting its services. During Lirette's 4–year employment with Sperry, he spent 75–80% of his time offshore working on special purpose drilling rigs. Each work assignment lasted between one and fifteen days. He ate and slept aboard the drilling rigs. In his 4 years with Sperry he worked for 23 different companies aboard movable rigs. All of his assignments were in the Ship Shoal area of the Gulf of Mexico. Lirette did not possess seaman's papers or a coast guard license.

He injured his knee while working aboard one of Quarles's special purpose drilling rigs in the Gulf of Mexico. He alleged claims of Jones Act negligence and maintenance and cure against Sperry and claims of unseaworthiness and vessel negligence against Quarles. To invoke Jones Act jurisdiction, Lirette claimed that he was the member of the crew of Quarles' vessel at the time of his injury.

Based on these facts, the district court ruled that Lirette failed to establish that he was permanently assigned to an identifiable vessel or fleet of vessels as required to state a Jones Act claim. We agree.

The Fifth Circuit first outlined the criteria for Jones Act seaman status in *Off-*

*shore Company v. Robison,* 266 F.2d 769 (5th Cir.1959). In a later opinion the court stated:

> The *Robison* criteria are three-fold: whether the worker performs a substantial amount of his work aboard a vessel; whether he is assigned more or less permanently to a vessel or identifiable fleet of vessels; and whether his work duties contribute to the mission of the vessel.

*Munguia v. Chevron Co., U.S.A.,* 768 F.2d 649, 652 (5th Cir.1985).

In *Barrett v. Chevron, U.S.A., Inc.,* 781 F.2d 1067 (5th Cir.1986) (en banc), we clarified the definition of fleet of vessels:

> "By fleet we mean an identifiable group of vessels acting together or under one control. We reject the notion that fleet of vessels in this context means any group of vessels an employee happens to work aboard. Unless fleet is given its ordinary meaning, the fundamental distinction between members of a crew and transitory maritime workers such as longshoremen is totally obliterated."

*Barrett,* 781 F.2d at 1074.

This circuit has recently considered whether a worker who performs jobs aboard several different drilling rigs owned by different companies is assigned to an identifiable fleet of vessels within the meaning of the Jones Act. In *Langston v. Schlumberger Offshore Services, Inc.,* 809 F.2d 1192 (5th Cir.1987), we held that a wireline operator who had performed jobs for 10 unrelated owners aboard 15 distinct vessels was not a seaman for Jones Act purposes because the "evidence [did] not suggest that these vessels were commonly controlled or had any other nexus that would support a finding that they were a fleet." *Langston,* 809 F.2d at 1194.

These decisions control Lirette's appeal. Lirette was not a Jones Act seaman because the 23 special purpose drilling rigs he worked aboard were not under the common ownership or control of his employer nor did they share a nexus which would support a finding that they were a fleet.

Lirette argues that the 23 vessels shared a geographic nexus. He states that because they were all stationed in the Ship Shoal area of the Gulf of Mexico they constitute a fleet. We cannot accept this argument. *Barrett* clearly states that the nexus binding a fleet of vessels must be common ownership or control. As Sperry points out, accepting Lirette's geographic nexus test would mean that all ships on the waters of Lake Superior were an identifiable fleet of vessels. Such a result conforms with neither the letter nor the spirit of the Jones Act. Without evidence of common ownership or control, we cannot find that Lirette was assigned to a fleet of vessels.

Lirette further argues that he has Jones Act seaman status under the court's ruling in *Bertrand v. International Mooring & Marine, Inc.,* 700 F.2d 240 (5th Cir.1983). In *Bertrand* the court held that a member of an anchorhandling crew injured after a seven day mission aboard a vessel chartered by his employer was a Jones Act seaman. Although the employee in *Bertrand* was assigned to different vessels under separate ownership, the court held he was a Jones Act seaman because he was "continuously subjected to the perils of the sea like blue water seamen and was engaged in classical seaman's work." *Bertrand,* 700 F.2d at 245 (*quoting Bertrand v. International Mooring and Marine, Inc.,* 517 F.Supp. 342, 348 (W.D.La.1981).

The court clarified *Bertrand* in *Buras v. Commercial Testing & Engineering Co.,* 736 F.2d 307 (5th Cir.1984). It stated:

> Although *Bertrand* thus expanded the concept of a fleet to encompass vessels used, but not owned or chartered, by the employer, we do not believe that it can fairly be read so broadly as to confer seaman status on every worker whose duties place him aboard a large number of randomly-owned and controlled ves-

sels for short periods of time that aggregate to comprise a substantial portion of his working time, nor do we believe that *Bertrand* rejected the identifiable or recognizable fleet requirement established by our prior cases. Rather, *Bertrand* must be read in light of the factual situation it involved. Our concern there was to prevent the denial of Jones Act seaman status as a matter of law to those claimants who are engaged in traditional maritime activity on a vessel or vessels comprising an identifiable fleet in every respect except common control or ownership.

\*    \*    \*    \*    \*    \*

Because the claimants in *Bertrand* spent one hundred percent of their time performing vessel-related work; because their job was coextensive in time with the mission of the vessel; because their entire employment involved preparing to work or working from a vessel ... we held that the *Bertrand* plaintiffs ... satisfied the substantiality prong of *Robison.*

*Buras,* 736 F.2d at 311–12.

Lirette does not fall within the *Bertrand* exception to the common ownership or control requirement because he did not perform the traditional duties of a blue water seaman during his tenure with Sperry. He was a wireline operator who performed one specialized job for many different vessels. He did not spend his entire employment preparing to work or working aboard a single vessel. Although he ate and slept aboard vessels, he never worked aboard the drilling rigs for the duration of their mission. Sperry did not own, charter or lease any vessels in the course of its contracting work. His duties closely resembled those of a transitory maritime worker. As we stated in *Barrett,* the distinction between seamen and transitory maritime workers is fundamental and may not be blurred.

For the foregoing reasons, the order of the district court dismissing Lirette's Jones Act claims and reserving his LHWCA claims against Quarles is

AFFIRMED.