Hugh C. ARDLEIGH, et al.,
Plaintiffs-Appellants,

v.

SCHLUMBERGER LIMITED, et al.,
Defendants-Appellees.

No. 87–3330.

United States Court of Appeals,
Fifth Circuit.

Nov. 25, 1987.

Rehearing Denied Jan. 19, 1988.

H. Edward Sherman, New Orleans, La., for plaintiffs-appellants.

Thomas G. O'Brien, Edwin C. Laizer, New Orleans, La., for Shell & Ins.

Charles D. Simmons, New Orleans, La., for Schlumberger & Trav.

James K. Carroll, Randall C. Coleman, III, New Orleans, La., for DeMolle & St. Paul.

Before REAVLEY, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The district court dismissed Hugh Ardleigh's Jones Act claim because he was not a "seaman" doing a substantial part of his work on a "fleet of vessels." We affirm.

I

A

Schlumberger, Ltd., the Appellee, provided wireline services to oil companies in the Gulf of Mexico. A wireline operation gathers data from partially drilled oil and gas wells. By lowering sensitive geophysical instruments into the well, the crew can

obtain data important to production. Schlumberger sold its service in individual wireline jobs, dispatching a crew to the well on request.

Depending on the particular well, Schlumberger's crews worked either from movable drilling vessels or fixed platforms. The vessels used always were owned or chartered by the oil companies, not Schlumberger. Schlumberger did, however, install on the deck of each vessel a winch and computer device, known as a "CSU unit," for use in wireline operations. Oil companies typically paid Schlumberger six to seven thousand dollars per month to rent such a unit, even though it might sit unused on the vessel for long periods of time.

Ardleigh worked for Schlumberger as a wireline engineer during 1981 and 1982. Under the rotation system for wireline crews, Ardleigh was eligible to work on any one of 140 vessels and 67 platforms. In the course of his forty missions Ardleigh worked on thirty different vessels, with vessel work accounting for nearly 70 percent of his offshore time.

Ardleigh was injured on April 14, 1985, while en route to work on a drilling platform operated by Shell Offshore, Inc. The injury occurred on a crew boat that was owned and operated by Patrick DeMolle, who was transporting Ardleigh under an exclusive contract with Shell to move workers to and from the platform.

Ardleigh sued Schlumberger under the Jones Act in March, 1985. Ardleigh also named Shell as a defendant, alleging that he was a "borrowed servant" for Shell under the terms of the Act. The district court dismissed these claims on summary judgment, finding that "Ardleigh was not permanently attached to nor performing a substantial part of his work on an identifiable group or fleet of vessels."

## B

█ It is now well established in this circuit that itinerant wireline workers are not Jones Act seamen. *Lirette v. N.L. Sperry Sun, Inc.*, 831 F.2d 554 (5th Cir. 1987); *Langston v. Schlumberger Offshore Services, Inc.*, 809 F.2d 1192 (5th

Cir.1987); *Cox v. Otis Engineering Corp.*, 474 F.2d 613 (5th Cir.1973). Although such workers may spend a significant amount of time on seagoing vessels, they usually have no permanent relationship with a particular vessel or fleet of vessels.

Ardleigh may be classified as a seaman only if the thirty different vessels on which he worked constituted a "fleet." As we stated in *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1074 (5th Cir.1986), "by fleet we mean an identifiable group of vessels acting together or under one control." As the court explained in *Langston*, however, the vessels on which a wireline engineer works are not so related. *See Langston*, 809 F.2d at 1194.

Ardleigh makes only one argument that has not previously been rejected by this court: that the vessels on which Schlumberger crews worked had a "nexus" because each vessel had a Schlumberger CSU unit installed on its deck. Because an oil company paid to rent the device, it might be inclined to use a Schlumberger crew when wireline services were needed. This could make it possible to identify the set of vessels on which Ardleigh would perform his work.

Even accepting these inferences, Ardleigh still had no relationship to a fleet of vessels. Despite the presence of Schlumberger's CSU units, the oil company vessels did not "act[ ] together or under one control." The fact that the installation of CSU units might have made it easier to predict the vessels on which Ardleigh would be assigned to work says nothing about the relationship between those vessels. Under our cases, then, Ardleigh cannot be classified as a seaman.

## II

█ Ardleigh also sought relief outside the Jones Act, alleging general maritime torts of "retaliatory discharge, threat of retaliatory discharge, and interference with maritime rights." The district court recognized the existence of a maritime retaliatory discharge action, *see Smith v. Atlas Off-shore Boat Service, Inc.*, 653 F.2d 1057

(5th Cir.1981), but held that it only applies to workers who qualify as seamen under the Jones Act. *See Buchanan v. Boh Brothers Constr. Co., Inc.,* 741 F.2d 750 (5th Cir.1984). The district court's ruling is correct.

■ The district court also found that no action exists for interference with maritime rights. Ardleigh directs us to no authority or reasoning inconsistent with this ruling and we therefore decline to create a new cause of action on the facts before us.

### III

■ Ardleigh's last allegation of error relates to his separate claim against Patrick DeMolle, the operator of the boat on which Ardleigh was injured. DeMolle was not named in Ardleigh's original complaint, and Ardleigh did not amend to include DeMolle until May 5, 1986, well after the end of the prescriptive period on April 14, 1985. The district court dismissed the claim as time-barred and did not permit the amendment to relate back to the original complaint because of the "total absence of facts" indicating that DeMolle had notice of the action within the limitations period. Fed.R.Civ.P. 15(c).

We agree with the district court. Ardleigh's only evidence of DeMolle's notice was the statement of another passenger on the crewboat, Thomas Beeman. Beeman testified that he had been contacted by an attorney about the accident some time before June 12, 1985. This evidence is too speculative to support a reasonable inference that DeMolle had notice before April 14, 1985. Beeman did not say that the attorney identified himself with DeMolle or that he was acting upon knowledge of the existing lawsuit. In addition, the attorney may well have contacted Beeman between April 14, 1985, and June 12, 1985, which still would place notice after the prescriptive period had ended.[1]

AFFIRMED.

---

1. We will not consider Ardleigh's alternative argument that DeMolle had "constructive notice" of the action through Shell. Ardleigh did not make the argument to the district court, so it is not properly before us.