John MASTERSON

v.

EPIC DIVERS, INC.

Civ. A. No. 91–3110.

United States District Court,
E.D. Louisiana.

Oct. 29, 1992.

Judgment Vacated on Rehearing
Dec. 16, 1992.

Patrick Amedee and Robert Delise, New Orleans, La., for plaintiff.

Ronald Johnson, New Orleans, La., for defendant.

## RULING ON MOTION

LIVAUDAIS, District Judge.

Defendant has filed a motion for summary judgment asking this Court to declare that plaintiff does not qualify for seaman status under the Jones Act (46 U.S.C.App. § 688). Plaintiff opposes the motion and requests that the Court, *sua sponte*, grant summary judgment in his favor, finding that he is a seaman as a matter of law.

### A. Factual Background

At some time in 1989, defendant contracted with Chevron Oil Company to re-move abandoned Chevron pipelines buried in the floors of Timbalier and Buras Bays. Defendant removed the pipelines from June 22, 1989 until September 1, 1989. Plaintiff began working for defendant on June 22, 1989 and was assigned as a diver to the pipeline removal project. Plaintiff's first assignment, during the week of June 22–June 28, involved diving from a self-propelled barge in Buras Bay. Plaintiff's next assignment lasted from June 29 until September 1. During that time, plaintiff worked as a diver from three separate barges in Timbalier Bay. He suffered a severe knee injury during a dive from one of the three barges on July 23. On two occasions, one in July and one in August, plaintiff was called away from Timbalier Bay to perform diving services at Avondale Shipyard. In July, plaintiff dove from a small boat, while in August he dove from a land-based ladder. Plaintiff completed his duties at Timbalier Bay in September 1989. In October 1989, plaintiff worked from four different barges, each owned by a different company, at four different locations. From November 1989 until the Fall of 1990, plaintiff worked primarily from an LL & G barge at Bully Camp.

Defendant did not own, charter, manage, or control any vessels during the time in which it employed plaintiff. The vessels off of which plaintiff worked were owned by different companies and customers of defendant.

### B. Procedural Analysis

Historically, the Fifth Circuit recognized that "[s]eaman status is generally a question for the jury. Only in rare cases is the question taken from the jury or trier of facts." *Wallace v. Oceaneering Intern.*, 727 F.2d 427, 432 (5th Cir.1984). However, "summary judgment is proper in cases where the underlying facts are undisputed and the record reveals no evidence from which reasonable persons could draw conflicting inferences." *Lirette v. N.L. Sperry Sun, Inc.*, 831 F.2d 554, 555 (5th Cir. 1987).

Thus, we have held that "where the facts establish *beyond question as a matter of law* [the lack of seaman status] ... a court ... may, in the proper case, hold

that there is no reasonable evidentiary basis to support a jury finding that the injured person is a seaman ... under the Jones Act."

*Barrett v. Chevron, U.S.A., Inc.,* 781 F.2d 1067, 1074 (5th Cir.1986) (alteration in original) (citations omitted). As explained in the analysis of seaman status below, this Court finds that no evidentiary basis exists to support a finding that plaintiff in the instant case is a seaman. Despite plaintiff's contention to the contrary, the facts in this case are not in dispute. Instead, the dispute surrounds the legal conclusions that this Court must draw from those facts.

The court wishes to preface its analysis of seaman status by noting that plaintiff has understandably read the case law as favoring his position, and defendant has understandably read the case law as favoring its position. The collective Fifth Circuit jurisprudence in the area of seaman status seems to draw some fine lines in determining who qualifies as a seaman and who does not. After an exhaustive review of all of the relevant law, and after examining the direction in which the Fifth Circuit has moved in this area, this Court believes that it has no choice but to grant defendant's motion for summary judgment, and thereby conclude as a matter of law, that plaintiff is not a seaman under the Jones Act.

## C. Seaman Status

"An injured worker attains seaman status by proving: (i) permanent attachment to or substantial work on a vessel or an identifiable fleet of vessels; and (ii) contribution to the function or mission of the vessel or an identifiable fleet of vessels." *Bach v. Trident Steamship Co., Inc.,* 920 F.2d 322, 324 (5th Cir.), *vacated,* —— U.S. ——, 111 S.Ct. 2253, 114 L.Ed.2d 706, *modified,* 947 F.2d 1290 (5th Cir.1991).

In examining the first criterion, the facts of this case clearly show that plaintiff was neither permanently attached to nor did he perform a substantial amount of work on a single vessel. The issue, therefore, is whether or not plaintiff performed substantial work on an identifiable fleet of vessels. The Fifth Circuit defined "identifiable

fleet" in *Barrett v. Chevron, U.S.A., Inc.,* 781 F.2d 1067, 1074 (5th Cir.1986):

In this case, we consider the duration of the employee's assignment necessary to support submission to a jury of the question whether he performed a substantial portion of his duties aboard a vessel or fleet of vessels. By fleet we mean an identifiable group of vessels acting together or under one control. We reject the notion that fleet of vessels in this context means any group of vessels an employee happens to work aboard. Unless fleet is given its ordinary meaning, the fundamental distinction between members of a crew and transitory maritime workers such as longshoremen is totally obliterated.

The Court now considers whether plaintiff performed a substantial amount of his duties aboard an identifiable group of vessels acting together or under one control. In order to decide that issue, the Court must first determine the time frame in which to measure a "substantial" amount. If, as plaintiff contends, the relevant time frame includes only the three uninterrupted periods during 1989 (June 22–July 16; July 23–August 9; August 27–September 1) when plaintiff worked off of Chevron-owned vessels, then a jury question would exist as to whether plaintiff spent a "substantial" amount of time on those vessels. However, if the relevant time frame includes plaintiff's entire period of employment with defendant, the law dictates that plaintiff does not qualify as a Jones Act seaman.

This Court chooses to adopt the latter approach based on its reading of *Barrett.* That court noted that "if the employee's regularly assigned duties require him to divide his time between vessel and land (or platform) his status as a crew member is determined in the context of his entire employment' with his current employer." *Id.* at 1075 (citations omitted). The record indicates that plaintiff's duties required such a division of his time (plaintiff's deposition transcript, p. 72):

Q: Did you work both off of boats and off of platforms and maybe just going into the water from the land—

A: Yeah.

Q: —or all combinations?

A: (Nods head affirmatively.)

Q: Can you give me some idea how much of your work as a diver involves working off of vessels of some kind?

A: Ninety percent or more.

Both the record, and the job tickets submitted as defense exhibit B, indicate that plaintiff did not always work off of vessels.

While plaintiff testified that he worked off of vessels at least 90 percent of the time, that statistic is not reason for this court to limit its "substantial amount of work" inquiry only to the short period of time that plaintiff worked off of the Chevron-owned vessels. The *Barrett* court clearly announced that focusing on a short time period, rather than on the entire employment period, is proper only when the plaintiff has been permanently assigned to the job on which he was working, or to the location at which he was working, at the time of injury. *Id.* at 1075–76. In the instant case, plaintiff was neither permanently assigned to dive from Chevron vessels, nor to dive in Timbalier Bay, at the time he suffered his leg injury. Accordingly, this Court examines in the context of his entire employment whether plaintiff performed a substantial amount of his work aboard a fleet of vessels.

Given the record, this Court finds that plaintiff fails to meet the vessel connection requirement. As noted above, a fleet means a group of vessels acting together, or under one control. The job tickets submitted by defendant as exhibit B indicate that in the first four months of his employment, plaintiff worked off of at least seven different vessels owned by four different companies. The vessels certainly were not under one control, and nothing in the record indicates that they all acted together as one fleet. In fact, plaintiff dove from these vessels as part of different jobs in different locations. The Fifth Circuit has repeatedly affirmed grants of summary judgment in favor of the defendant when the plaintiff fails to meet the vessel connection requirement. *See Bach; Lirette v. N.L. Sperry Sun, Inc.,* 831 F.2d 554 (5th Cir.1987); *Langston v. Schlumberger Offshore Services, Inc.,* 809 F.2d 1192 (5th Cir.1987); *Buras v. Commercial Testing &*

*Engineering Co.,* 736 F.2d 307 (5th Cir. 1984).

Plaintiff astutely directs this Court's attention to footnote 13 in the *Barrett* case which left open the possibility that the Fifth Circuit in future cases might exempt some individuals from the vessel connection requirement and still find that they qualify as seamen under the Jones Act. The *Barrett* court declined to decide whether the vessel connection principle "governs the crewmember status of the maritime worker who spends virtually all of his time performing traditional seaman's duties—work closely related to the movement of vessels—but does his work on short voyages aboard a large number of vessels." *Id.* at 1075 n. 13. Plaintiff asserts that he fits into this exception, and therefore, that he should be exempt from demonstrating that he worked on a vessel or a fleet of vessels. The court disagrees for two reasons.

First, the *Barrett* court in footnote 13 cited to *Bertrand v. International Mooring & Marine, Inc.,* 700 F.2d 240 (5th Cir. 1983), as an example of when an individual might be exempt from the vessel connection requirement. Plaintiff argues that the circumstances surrounding his work were similar to those surrounding the work of the anchorhandlers in *Bertrand,* and for that reason, this Court should exempt him from the vessel connection requirement. This Court, however, refers plaintiff to controlling language in *Buras v. Commercial Testing & Engineering Co.,* 736 F.2d 307 (5th Cir.1984):

Although *Bertrand* thus expanded the concept of a fleet to encompass vessels used, but not owned or chartered, by the employer, we do not believe that it can fairly be read so broadly as to confer seaman status on every worker whose duties place him aboard a large number of randomly-owned and controlled vessels for short periods of time that aggregate to comprise a substantial portion of his working time, nor do we believe that *Bertrand* rejected the identifiable or rec-

ognizable fleet requirement established be our prior cases. Rather, *Bertrand* must be read in light of the factual situation it involved. Our concern there was to prevent the denial of Jones Act seaman status as a matter of law to those claimants who are engaged in traditional maritime activity on a vessel or vessels comprising an identifiable fleet in every respect except common control or ownership.

*Id.* at 311. In the instant case, the vessels off of which plaintiff worked do not comprise "an identifiable fleet in every respect except common control or ownership." As noted above, several of the vessels from which plaintiff worked carried out tasks different from and in locations different from each of the other vessels. For this reason, plaintiff's work, unlike the anchorhandlers' work in *Bertrand,* does not fall within the narrow exception created in the *Barrett* footnote. Furthermore, although the *Buras* court purposely overlooked the historical requirement of "common control or ownership," the Fifth Circuit implicitly called that decision into question by recently requiring common control or ownership to establish that a fleet exists. *See Campo v. Electro–Coal Transfer Corp.,* 970 F.2d 51 (5th Cir.1992). The evidence in the instant case shows that all of the vessels off of which plaintiff worked were not owned or controlled by the same party.

Second, even if plaintiff did fall within the *Barrett* exception, this Court interprets the *Bach* decision as one which closes the door on exempting individuals from the vessel connection requirement. *Bach* addressed the very question that *Barrett* left open in footnote 13. 920 F.2d at 324. The *Bach* court refused to recognize an exception to the vessel connection requirement:

> We have frequently refused to extend seaman's protections to workers exposed to a seaman's perils but who lacked the requisite connection to a vessel or identifiable fleet of vessels ...

> Similarly, we have not granted seaman status to workers who performed the work usually or traditionally done by seamen but who lacked connection to a vessel or fleet of vessels. To the contrary, we have always required those workers performing traditional maritime functions to satisfy the vessel connection test.

*Id.* at 325 (citations omitted). Plaintiff contends that he performed traditional seaman's work. However, we need not decide that issue, because even if it were so, plaintiff does not satisfy the vessel connection test for the reasons stated above. Under *Bach,* plaintiff does not qualify as a Jones Act seaman. This court therefore finds no reasonable evidentiary basis upon which a jury could determine that plaintiff is a Jones Act seaman.

Accordingly,

IT IS ORDERED that defendant's motion for summary judgment on the issue of seaman status be and is hereby GRANTED.

## RULING ON MOTION FOR REHEARING

Plaintiff John Masterson has filed a motion for a rehearing of defendant's summary judgment motion. This Court entered summary judgment in favor of defendant Epic Divers, Inc. on October 29, 1992. Defendant opposes the motion for rehearing. The Court heard oral argument on the motion on December 9, 1992.

The Court has reconsidered its previous decision in light of the evidence that during the window of time in which plaintiff suffered his leg injury, he worked 51 days out of 53 days aboard five vessels, all of which were under the control of Chevron Oil Company. The evidence originally presented to the Court failed to provide such a clear picture. While the Court still believes that plaintiff does not fit into any exception to the vessel connection requirement (see ruling of the court entered on October 29, 1992, p. 7), the question of whether he was permanently assigned to, or performed a substantial amount of his duties on a fleet of vessels, is a question of fact for the jury. Given the facts submitted by plaintiff at the December 9 hearing, this Court cannot say "that there is no reasonable evidentiary basis to support a jury finding that the injured person is a seaman ...

 

under the Jones Act." *Barrett v. Chevron, U.S.A., Inc.,* 781 F.2d 1067, 1074 (5th Cir.1986).

"Determining seaman status under the Jones Act is 'an inherently factual question' generally left to the fact-finder. 'Nonetheless, if the requisite proof is absent, a court may decide that seaman status is lacking as a matter of law.'" *New v. Associated Painting Services, Inc.,* 863 F.2d 1205, 1207 (5th Cir.1989) (citations omitted). In this case, plaintiff has submitted the requisite proof to demonstrate that there exists a question of fact for the jury.

Accordingly,

IT IS ORDERED that the plaintiff's Motion for Rehearing be and is hereby GRANTED.

IT IS FURTHER ORDERED that the judgment of this Court against plaintiff, entered on October 30, 1992, be and is hereby VACATED.