702 So.2d 1064 (1997)
Kerry DOUCET, Jr., Plaintiff-Appellant,
v.
COMPUTALOG WIRELINE SERVICES, INC., et al., Defendants-Appellees.
No. 97-551.
Court of Appeal of Louisiana, Third Circuit.
October 29, 1997.
*1065 Brian M. Caubarreaux, Marksville, Barry Ray Laiche, Lafayette, for Kerry Doucet, Jr.
Charles A. Mouton, Lafayette, for Computalog Wireline Services, Inc.
Francis X. Neuner, Jr., Clayton, MO, Dean Anderson Cole, Lafayette, for Harris Services, Inc.
Before SAUNDERS, PETERS and AMY, JJ.
AMY, Judge.
Plaintiff, Kerry Doucet, Jr., sought recovery pursuant to the Jones Act, Longshore and Harbor Workers' Compensation Act, and general maritime principles of law for injuries allegedly sustained while working aboard a barge as a wireline operator. His employer, Computalog Wireline Services, Inc., filed a Motion for Summary Judgment arguing that Doucet did not qualify as a "seaman" and, therefore, is unable to recover under either the Jones Act or general maritime principles. The district court found in favor of the defendant granting the Motion for Summary Judgment. The plaintiff appeals that determination. We affirm.

DISCUSSION OF THE RECORD
The record indicates that the plaintiff, Kerry Doucet, Jr., was first employed by Computalog Wireline Services, Inc. as a wireline operator in December 1995. His deposition testimony reveals that the plaintiff was assigned to a crew by Computalog and that the crew would be assigned to a particular "job" until it was completed. The plaintiff stated that, in the short while he had been employed by Computalog, approximately fifty percent of his job assignments were land-based jobs while the remaining fifty percent were performed aboard the barges of Computalog's customers. He stated that, while his first assignment with Computalog was land-based and lasted only one day, some of his assignments lasted as long as four or five days.
After an assignment was completed, whether on land or on a barge, the crew would work at Computalog's office readying themselves for their next assignment. The plaintiff testified that they usually only had to wait two to three days before once again going out on assignment. He stated that jobs were assigned to the crews on a rotating basis, i.e., the next available crew would be given the next available assignment.
On July 14, 1996, the time of the accident now at issue, the plaintiff's crew was assigned to a job on the barge of a Computalog customer, Harris Drilling, Inc. The plaintiff claims to have been injured after tripping on a chain and subsequently falling onto the handrail of a walkway.
The plaintiff brought suit against Computalog and Harris seeking recovery for his injuries pursuant to the Jones Act, the Longshore and Harbor Workers' Compensation Act[1], and general maritime law. Computalog filed a Motion for Summary Judgment arguing that the plaintiff lacked seaman status as required to recover under the Jones Act. The trial court granted the summary judgment and, accordingly, dismissed the plaintiff's claim against Computalog. On appeal, the plaintiff maintains that the trial court erred in the following: (1) Granting Computalog's Motion for Summary Judgment since summary judgment is improper for the determination of seaman status; (2) Granting the summary judgment based on the plaintiff's occupation as a wireline operator since factual issues as to the plaintiff's job duties remain; (3) Granting the motion on the basis that Computalog did not "control" the vessel since a lack of control does not preclude seaman status; and (4) Finding that the plaintiff was not permanently assigned/connected to the vessel and that he did not perform a substantial part of his work aboard the barge in direct accomplishment of the vessel's mission.
*1066 In sum, the plaintiff's arguments all relate to the appropriateness of summary judgment in the instant matter and issues of fact which he believes remain. As such, these assignments will be addressed together in our review of the judgment.

LAW
An appellate court's review of a summary judgment is de novo and utilizes the same standard governing the trial court's consideration of the issue. Sigler v. Grace Offshore Co., 95-357 (La.App. 3 Cir. 10/4/95); 663 So.2d 212. Summary Judgment guidelines are set forth in Articles 966-969 of the Louisiana Code of Civil Procedure. Article 966 provides, in part, the following:
C. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.
With regard to the appropriateness of summary judgment for the determination of seaman status as it relates to the Jones Act, the United States Supreme Court has said:
The inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee's precise relation to it. See Desper v. Starved Rock Ferry Co., 342 U.S. 187, 190, 72 S.Ct. 216, 218, 96 L.Ed. 205 (1952) ("The many cases turning upon the question whether an individual was a `seaman' demonstrate that the matter depends largely on the facts of the particular case and the activity in which he was engaged at the time of the injury"). Nonetheless, summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion. Anderson [v. Liberty Lobby], supra, 477 U.S., [242] at 248, 250-251, 106 S.Ct., [2505] at 2510, 2511-2512 [91 L.Ed.2d 202 (1986)].
McDermott Intern., Inc. v. Wilander, 498 U.S. 337, 356, 111 S.Ct. 807, 818, 112 L.Ed.2d 866 (1991). See also Harbor Tug and Barge Co. v. Papai, ___ U.S. ___, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997); Lirette v. N.L. Sperry Sun, Inc., 831 F.2d 554 (5th Cir.1987).
Given these pronouncements that, although unusual, summary judgment may be appropriate for the determination of seaman status, we reviewed the record before us to determine if the facts and law support only one conclusion.
The United States Supreme Court has recently clarified the test necessary in determining seaman status. In writing for the Court, Justice O'Connor explained:
"[T]he essential requirements for seaman status are twofold. First ... an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission....
"Second, and most important for our purposes here, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." 515 U.S., at 368, 115 S.Ct., at 2179 (citations and internal quotation marks omitted).
Harbor Tug and Barge, ___ U.S. at ___, 117 S.Ct. at 1540 (1997) (quoting Chandris, Inc. v. Latsis, 515 U.S. 347, 368, 115 S.Ct. 2172, 2190, 132 L.Ed.2d 314 (1995)) (citations omitted). With regard to this second factor, the Supreme Court stated that "[i]n deciding whether there is an identifiable group of vessels of relevance for a Jones Act seaman status determination, the question is whether the vessels are subject to common ownership or control." Id. at ___, 117 S.Ct. at 1541.
In the present case, the trial court accepted oral arguments on Computalog's Motion for Summary Judgment, and then rendered reasons for granting the motion. The court stated, in part, the following:
After consideration of the pleadings, affidavits and evidence on record, the Court grants defendant's Motion for Summary Judgment. The Court is of the opinion that plaintiff, a wireline operator, lacks the nexus or permanent connection to a vessel *1067 or identifiable fleet of vessels with respect to his employment with Computalog. Furthermore, it is evident that plaintiff was not permanently assinged [sic] to a particular vessel. Accordingly, the Court finds that as a matter of law, plaintiff cannot establish "seaman status" under the Jones Act.
(Footnote omitted). Therefore, the trial court concluded that the plaintiff does not meet the second factor necessary for seaman status.
The plaintiff's deposition testimony indicates that his placement aboard a vessel rather than on land was determined only by the rotation of Computalog's crews. Further, the vessels aboard which the plaintiff worked did not have a substantial connection to an identifiable group of vessels. Rather, the record indicates that the barges upon which the plaintiff worked were owned by Computalog's various customers. In fact, the plaintiff stated that, at the time of his accident, he did not know who owned the barge on which he was working, but only learned that it was owned by Harris through the discovery process. As for previous assignments, he was unable to recall the company name of every barge on which he worked.
The United States Fifth Circuit Court of Appeals has traditionally used a test for the determination of seaman status similar to that recently pronounced by the Supreme Court. See Lirette, 831 F.2d 554; Barrett v. Chevron, U.S.A., Inc., et al., 781 F.2d 1067 (5th Cir.1986); Offshore Company v. Robison, 266 F.2d 769 (5th Cir.1959). Using that test, the fifth circuit has repeatedly upheld summary judgments declaring that itinerant wireline workers are not seamen. See Lirette, 831 F.2d 554; Langston v. Schlumberger Offshore Services, Inc., 809 F.2d 1192 (5th Cir.1987); Cox v. Otis Engineering Corp., 474 F.2d 613 (5th Cir.1973).
In Ardleigh v. Schlumberger Limited, 832 F.2d 933 (5th Cir.1987), the fifth circuit concluded that a wireline operator working under conditions similar to those faced by the plaintiff in the instant matter, was not a seaman. Ardleigh was employed by Schlumberger who used a rotation system for wireline crews. The court stated that, using this system, "Ardleigh was eligible to work on any one of 140 vessels and 67 platforms. In the course of his forty missions Ardleigh worked on thirty different vessels, with vessel work accounting for nearly 70 percent of his offshore time." Id. at 934. Further, as in the present case, the barges on which Ardleigh worked were either owned or chartered by Schlumberger's customers, but never by Schlumberger. In concluding that these working conditions did not make Ardleigh a seaman, the fifth circuit found the following:
Ardleigh may be classified as a seaman only if the thirty different vessels on which he worked constituted a "fleet." As we stated in Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067, 1074 (5th Cir.1986), "by fleet we mean an identifiable group of vessels acting together or under one control." As the court explained in Langston, however, the vessels on which a wireline engineer works are not so related. See Langston, 809 F.2d at 1194.
....
... Under our cases, then, Ardleigh cannot be classified as a seaman.
Id. at 934.
As the plaintiff in the instant matter was also a member of a rotating crew and was assigned to various vessels owned by various companies, we conclude that the plaintiff was not assigned to an identifiable fleet. Seaman status is, therefore, precluded. The trial court was correct in granting the summary judgment.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assigned to the plaintiff, Kerry Doucet, Jr.
AFFIRMED.
NOTES
[1] 33 U.S.C.A. § 901 et seq.