| .MARION F. EDWARDS, Judge.
In this workers’ compensation suit, the employers appeal the judgment finding a deceased worker’s parents eligible for funeral expenses and benefits under the Louisiana Workers’ Compensation Act. For the following reasons, we amend the workers’ compensation judge’s ruling and affirm as amended.
FACTS AND PROCEDURAL HISTORY
Joseph Phillips, Jr. (“Phillips, Jr.”) was killed when he fell from a tow boat, the “Ms. Pauline,” and drowned in Barataría Channel in Jefferson Parish on October 7, 2002. At the time of his death, Joseph Phillips Jr. was part owner of, and employed by, J.P. & Sons, Inc., a contracting business located in Jefferson Parish. Phillips, Jr. was engaged in the course and scope of his employment with J.P. & Sons, Inc. at the time of his death.
Joseph and Pauline Phillips (“the Phillips”), the parents of Joseph Phillips, Jr., sought funeral expenses and benefits under the Louisiana | ..Workers’ Compensation Act from them workers’ compensation carrier, Gray Insurance Company. Gray denied coverage on the basis that it felt the action was more properly covered by either the Longshore and Harbor Worker’s Compensation Act[1] (“LWHCA”), or the Jones Act.[2]
The Phillips thereafter filed a Disputed Claim with the Office of Worker’s Compensation against appellants, Joseph Management Services, Inc and J.P. & Sons, (“Employers”). Employers filed a peremptory exception of lack of subject matter jurisdiction, which was denied on March 18, 2008.
Trial on the matter began on April 14, 2003. At the conclusion of the trial, the worker’s compensation Hearing Officer ruled in favor of the Phillips, awarding $75,000 each, as well as funeral expenses.
Appellants timely filed the present appeal, and the Phillips, in their answer to the appeal, further petitioned this court to award attorney’s fees, penalties, the cost of the proceedings, and legal interest.
LAW AND ARGUMENT
In their first assignment of error, Phillips, Jr.’s former Employers assert that the trial court erred in finding LWCA jurisdiction and awarding benefits, arguing that the maritime quality of Philips Jr.’s activities should compel a finding that Phillips Jr. was covered by either the LHWCA or Jones Act, which forecloses LWCA jurisdiction and an award of LWCA benefits.
LSA-R.S. 23:1035.2 states:
No compensation shall be payable in respect to the disability or death of any employee covered by the Federal Employer’s Liability Act, the Longshoremen’s and Harbor Worker’s Compensation Act, or any of its extensions, or the Jones Act.
|4We first consider whether Phillips, Jr.’s job duties with his Employers were of such a nature that an injury sustained in the course of performing these duties would have placed him within the jurisdiction of the LHWCA or the Jones Act.
At trial, the following evidence was adduced regarding Phillips, Jr.’s daily work duties.
Gerald Spohrer, Executive Director of the West Jefferson Levee District, testi *629 fied that he initially worked with Phillips, Jr. in the process of renewing levee district permits that had been issued to J.P. & Sons, and subsequently worked with him on various levee projects, all of which were land based. Spohrer has the impression that Phillips, Jr., “ran” J.P. & Sons, because he saw Phillips, Jr. “in the field,” in a supervisory capacity, managing crews and equipment.
Max Mega, Vice President of Audit for the Gray Insurance Company testified that Gray had worker’s compensation insurance on J.P. & Sons for a three year policy. An audit was conducted of J.P. & Sons on January 21-23, 2003 in regard to this case, to confirm that there had not been a mis-classification of employees in the prior 12 months, from September 1, 2001 through September 1, 2002. Mega explained that employees would fall into one of five classes: salesman, clerical, land, USL & H, and maritime class. Mega testified that as a result of the audit, in particular information provided to him by Joe Becker from J.P. & Sons, it was determined that one-third of Phillips Jr.’s pay would be classified as sales related, and two-thirds of his pay would be classified as maritime.
On cross examination, Mega said that he did not know if Becker was authorized by J.P. & Sons to agree to audit figures or reclassification of officers salaries by J.P. & Sons, and did not know if the information | .-¡provided to him by Becker to conduct the audit was accurate. Mega stated that on previous audits, Phillips Jr., salary had been classified completely as salesman related. Mega stipulated that the evidence he had with respect to the work of Phillips Jr. and the reclassification was the fact that Phillips Jr. died after falling off of a barge.
Pauline Phillips, Phillips, Jr.’s mother, and co-founder of J.P. & Sons, testified that Phillips Jr. spent most of his time in the field doing construction work, and operated boats like the “Ms. Pauline,” but “not on a steady basis.” Referring to her deposition, she recalled that Phillips, Jr. would use the boat, because it was the only way that one could reach the barges and dredges that were out in the river. She said that Philips, Jr.’s duties in the company were related to construction. Pauline Phillips stated that she never authorized anyone in her company to reclassify Philips, Jr., as a maritime employee.
Craig Breaux, a J.P. & Sons employee in the dredging department, had been with the company for approximately one year at the time of trial. Breaux stated that Phillips, Jr.’s title with the company was President. Breaux stated that Danny Anderson is normally the captain of the dredge and the “Ms. Pauline” when they’re performing routine duties, and that Phillips, Jr. was not a regular member of the crew of the dredge or the “Ms. Pauline.” Breaux said that he had never seen Phillips, Jr. on the dredge.
David Phillips, Phillips, Jr.’s brother, testified that he was one-third owner in the business, in charge of the construction department at the time of Phillips, Jr.’s death. David Phillips said that Phillips, Jr. duties for J.P. & Sons were mainly to run the “sand jobs,” consisting of piling sand that goes under the foundation of a house, as well of all of the “big heavy dirt jobs,” for use in the construction of levees. Both of these duties were strictly land | abased operations. David Phillips said that Phillips, Jr. was the supervisor of these duties, and ran the dirt jobs for approximately the last 1 and a-half years of his life. Phillips, Jr. was also responsible for the entertainment of clients.
Danny Anderson, supervisor of the dredge for J.P. & Sons testified that he had been with J.P. & Sons for four years at the time of trial. Shortly after the *630 accident, Anderson told investigators that Phillips, Jr. worked about 20% of time on the “Ms. Pauline” but has no way of knowing if that number is accurate or not. At trial, Anderson specifically refuted the percentage that he told investigators. Anderson said that he recalled three or four times since 1998 that Phillips, Jr. had helped with a dredging operation, and that he saw Phillips, Jr. operate the “Ms. Pauline” on three occasions over four years.
Marion Phillips, Phillips, Jr.’s brother who was active with the dredging department, testified that he called upon Phillips, Jr. for help on an as needed basis, and that Phillips, Jr.’s support was limited to helping him move the anchors. Phillips, Jr. was not always there to help out, and when he did help it was for only short periods of time. Marion Phillips estimated that Phillips, Jr. assisted him approximately two times out of six years that J.P. & Sons had been running the dredge, and that Phillips, Jr. had never been assigned to the dredge the whole time J.P. & Sons owned it.
Marion Phillips further testified that Phillips, Jr. did paperwork, checked invoices, went over bills, and checked on bid process, with nearly 100% of his time spent working on land based construction jobs or entertaining clients. Marion Phillips clarified that less than 1% of Phillips, Jr.’s time would have been spent assisting with anchoring.
17In order to receive benefits under the LHWCA, a worker must fulfill both a status test and a situs test. Under the status test, the worker must be engaged in “maritime employment.”[3] Under the situs test, the worker must suffer injury “upon the navigable waters of the United States.”[4] In this case, there is no dispute that Phillips, Jr. died upon navigable waters, thereby fulfilling the “situs” requirement of the LHWCA.
In Bienvenu v. Texaco, Inc.,[5] the court elaborated on what type of worker may meet the status and situs requirements, thereby becoming eligible for LHWCA benefits:
We therefore hold that a worker injured in the course of his employment on navigable waters is engaged in maritime employment and meets the status test only if his presence on the water at the time of injury was neither transient or fortuitous. The presence, however, of a worker injured on the water and who performs a “not insubstantial” amount of his work on navigable waters is neither transient nor fortuitous. Though we decline to set today the exact amount of work performance on navigable waters sufficient to trigger LHWCA coverage, instead leaving that task to the case-by-case development for which the common law is so well-suited.
To be eligible for relief under the Jones Act, one must first meet fit within the parameters of a “seaman status.” As explained by the court in Doucet v. Computalog Wireline Services, Inc.,[6]:
The essential requirements for seaman status are twofold. First ... an employee’s duties must contribute to the function of the vessel or to the accomplishment of its mission....
“Second, and most important for our purposes here, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) *631 that is substantial in terms of both its duration and its nature. (515 U.S., at 368,115 S.Ct., at 2179).
The determination of seaman status is inherently fact intensive, and each case must be decided under the facts presented therein.[7] In 1997, the |sUnited States Supreme Court in Harbor Tug and Barge Co. v. Papai[8] elaborated on the “substantial connection” requirement:
For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee’s connection to the vessel must concentrate on whether the employee’s duties take him to sea. This will give substance to the inquiry both as to the duration and nature of the employee’s connection to the vessel and be helpful in distinguishing land-based from sea-based employees.
In Buford v. Cardinal Services, Inc.,[9] the court established a guideline about what length of service could serve as a determining factor in deciding seaman status:
A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act. This figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases.[10]
In the present case, as detailed above, the trial court was presented with testimony from several witnesses that an overwhelming portion of Phillips, Jr.’s daily job duties with J.P. & Sons, Inc., consisted of performing land-based tasks. Additionally there was testimony from a number of witnesses who were actively engaged in the maritime arm of J.P. & Sons, Inc.’s business, that Phillips, Jr. had only participated very few times with this type of activity to their knowledge. While the court did not make a specific finding of what percentage of time Phillips, Jr. spent involved with maritime activities, the trial court did reject Employer’s assertions in total, presumably finding that Phillips, Jr. did not fulfill the “status” test of the | sLHWCA, nor the “substantial connection requirement” to qualify for seaman status and relief under the Jones Act.
 The manifest error standard of review applies to factual findings in a workers’ compensation case.[11] In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one.[12] Where there are two permissible views of the evidence, a factfinder’s choice of them can never be manifestly erroneous or clearly wrong.[13] Thus, if the factfinder’s findings are reasonable in light of the record, the court of appeal may not reverse or modify the judgment.[14]
Based upon our review of the record and the specific facts of this case, we cannot say that the trial court was manifestly *632 erroneous in finding that benefits were properly awarded to the Phillips under the Louisiana Workers’ Compensation Act.
In their second assignment of error, appellants assert that the trial court erred in excluding the testimony of Joseph Becker, concerning information allegedly provided by Phillips, Jr. related to his maritime activity.
At trial, Joseph Becker, a contract accountant who had been hired by J.P. & Sons to install new accounting software, testified. The Phillips objected to a portion of Becker’s testimony related to statements that Phillips Jr. had allegedly made to him regarding the nature of his work with J.P. & Sons, arguing that the statements at issue were hearsay and therefore were properly excluded under the Louisiana Code of Evidence. The Hearing | TnOfficer ruled in the Phillips favor, and required Employers to proffer the disputed portion of Becker’s testimony.
In determining whether a trial court has committed manifest error by the refusal or admission of certain testimony, we are bound by the edict that, “[T]he trial court is accorded vast discretion concerning the admission of evidence, and its decision will not be reversed on appeal absent an abuse of that discretion.” [15]
Hearsay is testimony in court or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein and thus resting for its value upon the credibility of the out-of-court asserter.[16] The central concern in the exclusion of hearsay evidence is lack of reliability because the declarant is not present, the statement is not made under oath and it is not subject to cross-examination.[17] La.R.S. 15:434 provides: “Hearsay evidence is inadmissible, except as otherwise provided in this Code.”
At the outset, appellants, citing LSA-C.E.'Art. 1101(B)(1), argue that the exclusionary rules in the Code of Evidence are less stringent in Worker’s Compensation cases, and therefore the Hearing Officer should have not excluded the statements. Appellants then rely on two Code of Evidence provisions that they claim apply to the statements allegedly made to Becker by Phillips, Jr.
Appellants argue that Phillips Jr.’s alleged statements to Becker should have been allowed under the business record exception of La. C.E. Art. 803(6), which excludes from the hearsay rule:
| n(6) Records of regularly conducted business activity. A memorandum, report, record, or data compilation, in any form, including but not limited to that which is stored by the use of an optical disk imaging system, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. This exception is inapplicable unless the recorded infor *633 mation was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under which the statement would not be excluded by the hearsay rule. [Emphasis added].
The “business record” at issue here, the audit itself which was reportedly generated in part from Phillips, Jr.’s alleged statements to Becker, was introduced into evidence without objection.[18] In the portion of Becker’s testimony that was not proffered, Becker testified that he had spoken with Phillips, Jr. about his duties with J.P. & Sons, and that based upon those conversations, Becker felt that Phillips, Jr.’s classification within the company needed to be changed for worker’s compensation purposes.
The court was further presented with evidence, however, that the audit in which the alleged statements by Phillips, Jr. were made was not ordered until after Phillips, Jr.’s death. The court also heard Becker’s own admission that he had been hired for the sole purpose of installing a new bookkeeping and accounting system, not to be the company auditor. Accordingly, we find no error in the trial court’s holding that the alleged information provided to Becker by Phillips, Jr., was not provided to Becker in a capacity for which |12he was routinely acting for the business, and that therefore the business exception was inapplicable.
We further find no merit to Employer’s assertion that Phillips, Jr.’s alleged statements were admissible under LSA-C.E. Art. 801(D)(3)(e), and see no abuse of discretion by the trial court in excluding the alleged statements as hearsay.
On appeal, the Phillips assert that the court erred in failing to award them costs, including attorney’s fees, witness fees, and deposition expenses.
LSA-R.S. 23:1310.9 provides:
If the workers’ compensation judge before which any proceedings for compensation or concerning an award of compensation have been brought, under the Workers’ Compensation Act, determines that such proceedings have not been brought on a reasonable ground, or that denial of benefits has not been based on a reasonable ground, the workers’ compensation judge shall assess the total cost of the proceedings to the party who has brought them or the party who has unreasonably denied payment of benefits.
Because the workers’ compensation judge did not make a finding that the present compensation proceeding has not been brought on a reasonable ground or that denial of benefits has not been based on a reasonable ground, however, LSA-R.S. 23:1310.9 is inapplicable.
LSA-R.S. 23:1317(B) states, in relevant part:
Costs may be awarded by the workers’ compensation judge, in his discretion, and when so awarded the same may be allowed, taxed, and collected as in other civil proceedings. The fees of expert witnesses shall be reasonable and shall not be allowed unless fixed in the judgment.
On review, -a Hearing Officer’s assessment of costs can be reversed by this court only upon a showing of abuse of discretion.[19]
*634 After review, we find no abuse of the trial court’s discretion in its decision not to award fees to the Phillips.
|13The Phillips further request that the Judgment be amended to include all accrued judicial interest.
LSA-R.S. 23:1201.3 provides, in relevant part:
Any compensation awarded and all payments thereof directed to be made by order of the workers’ compensation judge shall bear judicial interest from the date compensation was due until the date of satisfaction. The interest rate shall be fixed at the rate in effect on the date the claim for benefits was filed with the office of workers’ compensation administration.
Because the language of this statute is mandatory, an award of legal interest in workers’ compensation cases is not discretionary with the court, as the interest attaches automatically until the judgment is satisfied, whether prayed for in the petition or mentioned in the judgment.[20] Therefore, appellees are entitled to such interest in the present case and we amend the judgment accordingly.
For the foregoing reasons, the judgment of the trial court is amended, and affirmed as amended.
AMENDED AND AFFIRMED.

. 33 U.S.C. § 901, etseq.

. 46 U.S.C.App. § 688, et seq.

. 33 U.S.C. § 902(3).

. 33 U.S.C. § 903(a); Herb’s Welding, Inc. v. Gray, 470 U.S. 414, 105 S.Ct. 1421, 1423, 84 L.Ed.2d 406 (1985).

. 164 F.3d 901, 908 (5 Cir.1999).

. 97-551 (La.App. 3 Cir. 10/29/97), 702 So.2d 1064.

. Chandris, Inc. v. Latsis, 515 U.S. 347, 355, 115 S.Ct. 2172, 2183, 132 L.Ed.2d 314 (1995).

. 520 U.S. 548, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997).

. 2001-0738 (La.App. 3 Cir. 12/12/01), 801 So.2d 1269.

. 801 So.2d at 1276.

. Chaisson v. Cajun Bag & Supply Co., 97-1225, p. 13 (La.3/4/98), 708 So.2d 375, 380.

. Id.

. Chaisson, atp. 14, 708 So.2dat381.

. Id.

.Miller v. Southern Baptist Hosp., 2000-1352 (La.App. 4 Cir. 11/21/01), 806 So.2d 10; writ denied, 2001-3379 (La.2002), 811 So.2d 943.

. State v. Martin, 458 So.2d 454 (La.1984).

. C. McCormick, Evidence § 245 (E. Cleary ed.1984).

. The audit itself was discussed at length by witness Max Mega, supra.

. State v. Nicholls College Foundation, 592 So.2d 419, 422 (La.App. 1st Cir.1991), writ denied, 593 So.2d 651 (La.1992).

. Kortz v. Colt Energy Services, Inc., 97-159 (La.App. 5 Cir, 07/29/97), 698 So.2d 460, citing Crooks v. Town of Ball, 94-466 (La.App. 3 Cir. 11/2/94), 649 So.2d 597.